Donald WILLIAMS, Plaintiff-Appellee Cross-Appellant,

v.

Carl THOMAS, et al., Defendants,

Joseph Bolt, Defendant-Appellant Cross-Appellee.

No. 81–1376.

United States Court of Appeals, Fifth Circuit.

Dec. 6, 1982.

Rehearing Denied Feb. 4, 1983.

Sue L. Lagarde, Asst. Dist. Atty., Dallas, Tex., for defendant-appellant cross-appellee.

Locke, Purnell, Boren, Laney & Neely, Robert T. Mowrey (court-appointed), Dallas, Tex., for plaintiff-appellee cross-appellant.

Appeals from the United States District Court for the Northern District of Texas.

Before RUBIN and JOHNSON, Circuit Judges, and VERON *, District Judge.

JOHNSON, Circuit Judge:

Donald Williams initiated this section 1983 action seeking redress for injuries inflicted upon him while imprisoned in the Dallas County Jail, Dallas, Texas. Williams maintained that deputies Joseph Bolt and Larry Smith[1] imposed cruel and unusual punishment upon him and deprived him of his liberty without due process of law by grabbing him and slamming him against the wall and the floor of the Dallas County Jail. In an amended complaint, Williams added a state assault and battery action

pursuant to the district court's pendent jurisdiction and sought recovery of attorney's fees under 42 U.S.C. § 1988. The case was tried before a jury, and, thereafter, the district court rendered judgment against deputy Bolt and awarded Williams $500 in compensatory damages and $2500 in attorneys' fees. Deputy Bolt raises thirteen issues on appeal and Williams has filed a cross-appeal contending that the district court abused its discretion by making an insufficient award of attorneys' fees. This Court affirms the district court's award of $500 in compensatory damages, reverses the district court's inadequate award of attorneys' fees, remands this case for a determination of the proper amount of attorneys' fees due, and holds that the attorneys' fees award lies against the County.

I. *The Factual Background and the Jury's Response to the Court's Charge*

Donald Williams was an inmate in the Dallas County Jail on February 21, 1979. On that date, another male inmate in Williams' cell was caught by a female officer violating a jail rule, and, apparently, the inmate refused to cooperate with the officer. The supervisor of the third floor, Officer Riggins, was informed of the conflict and he requested that four male officers, including Deputy Bolt, and one female officer assist the investigating female officer in her attempt to curtail the inmate's violation of the jail rule. Since many of the male inmates had questioned the female officers' authority, Officer Riggins decided to send the two female officers into the cell in an attempt to establish their authority.

Williams claims to have been asleep during this potentially explosive situation. However, when the female officers entered the cell, Williams maintains that another inmate awakened him and told him that he had been requested to come out of the cell. As Williams came out of the cell, Officer

---

* District Judge of the Western District of Louisiana, sitting by designation.

1. Williams also joined Sheriff Carl Thomas as a defendant in his original complaint. However, the district court dismissed Sheriff Thomas from the lawsuit and the district court's actions, in this regard, have not been complained of on appeal.

Bolt, who was waiting outside with the other male officers, recognized Williams as "the inmate other deputies and I had fought with several times previously." Williams testified that as he exited the cell, Deputy Bolt grabbed him and slammed him against the wall and the floor. Moreover, Williams testified that Deputy Bolt kicked and beat him after he fell to the floor. As a result of Deputy Bolt's actions, Williams received injuries of sufficient severity to cause a doctor to refer Williams to Parkland Hospital for examination. The Dallas County Jail's medical records indicate that Williams sustained "bruises" to his left side, left arm, and left wrist.

In an attempt to vindicate his constitutional rights, Williams initiated this section 1983 action *pro se*. After the district court appointed counsel to represent Williams, an amended complaint was filed joining a pendent assault and battery action under Texas common law. At the close of the evidence, the district judge submitted special issues to the jury on the section 1983 cause of action and the state assault and battery action. The jury's responses indicated that Deputy Bolt was the officer responsible for Williams' injuries. The pertinent special issues were answered in the following manner:

*Section 1983 claim:*

1. Deputy Bolt used excessive force against Williams.

2. Deputy Bolt acted in good faith.

3. Deputy Bolt's use of excessive force was a proximate cause of Williams' injuries.

4. Williams was entitled to no monetary compensation for Deputy Bolt's use of excessive force.

*State assault and battery claim:*

1. Deputy Bolt committed an assault and battery against Williams.

2. Deputy Bolt's assault and battery was a proximate cause of Williams' injuries.

3. Deputy Bolt was not acting in self defense.

4. Williams was entitled to $500 as compensation for Deputy Bolt's assault and battery.

After the jury returned its verdict, Williams moved for judgment in conformity with the verdict. However, Deputy Bolt opposed entry of judgment in Williams' favor and moved for judgment in his favor based on the jury's affirmative response to the good faith issue that was submitted with the section 1983 claim. The district judge, concluding that the good faith defense was inapplicable in this case as a matter of law, rendered judgment for Williams and awarded $500 in compensatory damages pursuant to the jury's findings on the assault and battery claim. Moreover, deciding that Williams was a "prevailing party" under 42 U.S.C. § 1988, the district court awarded Williams $2500 in attorneys' fees. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## II. *Good Faith and the State Assault and Battery Claim*

Deputy Bolt contends on appeal that the jury's finding of good faith bars recovery by Williams on the state assault and battery action. Initially, it should be noted that the good faith defense was submitted only in relation to the section 1983 cause of action. The district court judge prefaced his instructions to the jury by stating: "I will first instruct you as to the federal law claims and then instruct you as to the state law claims." Thereafter, the district court judge instructed the jury on excessive force and good faith. After concluding the portion of the charge relating to the federal claim, the trial judge stated: "I will now instruct you as to the laws of the State of Texas as they relate to Williams' state claim of assault and battery." However, in instructing the jury on the state claim, no mention was made as to a good faith defense and no issue was submitted in that regard. Therefore, it is clear that the jury was directed to consider the issue of good faith only as it applied to the section 1983 claim.

Significantly, Deputy Bolt did not object to the trial court's failure to submit the good faith defense in relation to the assault and battery claim. Rule 51 of the Federal Rules of Civil Procedure specifically provides:

No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

Consequently, Bolt has waived any complaint he has concerning the district court's charge as it relates to the good faith defense and the assault and battery action.

In his final attempt to persuade this Court to apply the good faith defense to the state tort claim, Deputy Bolt contends that the section 1983 cause of action and the state assault and battery action merged into one claim, and, hence, the good faith finding bars recovery under both theories. Bolt's merger theory fails to recognize the fundamental distinction between state common law torts and federal constitutional torts. Although the Supreme Court has stated that section 1983 must be "... construed against a background of common law tort principles ...," *Monroe v. Pape,* 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961), the Court has refused to transform state common law tort liability into federal constitutional tort liability. As the Supreme Court stated in *Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979), "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." Heeding the Supreme Court's advice, this Court has held that proof that a government official acted in good faith will not enable the official to avoid liability under state common law principles. *Douthit v. Jones,* 619 F.2d 527 (5th Cir.1980). Moreover, recognizing that "... federal rights protection [may be] far less extensive than that afforded by the common law ....," this Court has refused to deny recovery on a pendent state tort action simply because the plaintiff failed to prevail on the section 1983 action. *Williams v. Kelly,* 624 F.2d 695, 697 (5th Cir.1980). Therefore, this Court holds that the federal and state claims did not merge, and, hence, the district court did not err in awarding the plaintiff $500 in compensatory damages based upon the jury's response to the state assault and battery action.

### III. *Good Faith and the Section 1983 Claim*

Deputy Bolt maintains that the district court erred in concluding that the good faith defense was inapplicable to the instant section 1983 action as a matter of law. However, as noted previously, the district judge entered judgment for Williams based upon the state assault and battery claim, rather than the section 1983 claim. Thus, even if the district court erred in refusing to apply the good faith defense to the section 1983 claim, and this Court expresses no opinion on this matter, Williams would still be entitled to recover under the state assault and battery action. As noted in Section II of this opinion, a jury finding of good faith under the section 1983 action would not bar Williams' recovery under the state cause of action. *See Douthit v. Jones,* 619 F.2d 527, 537 (5th Cir.1980) ("Proof that the defendant sheriff acted in good faith, while relevant to the issue of whether the plaintiff can recover punitive damages, will not enable him to avoid liability under Texas common law for the unlawful imprisonment of an individual."); *Hull v. City of Duncanville,* 678 F.2d 582, 585 (5th Cir.1982) ("The municipal actions so pleaded may constitute a [common law] tort, but they do not constitute a constitutional tort that justifies a 1983 action."). Thus, since this Court has affirmed Williams' recovery of compensatory damages under the state assault and battery action, it is unnecessary for this Court to decide whether the district court erred in refusing to apply the good faith defense to the section 1983 claim. Moreover, in light of the Supreme Court's holding in *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), it is apparent that the good faith defense,

as defined to the jury in this case, was improperly submitted.[2]

## IV.   Attorneys' Fees

### A.   Is Williams a Prevailing Party?

■ Deputy Bolt argues that the district court erred in concluding that Williams was entitled to attorneys' fees under 42 U.S.C. § 1988. In *Knighton v. Watkins,* 616 F.2d 795, 798 (5th Cir.1980), this Court made the following observation:

> The enactment of section 1983 demonstrates solicitude for the individual and concern for his protection against the abuse of his constitutional rights by the state and its officialdom. The Civil Rights Attorney's Fees Awards Act makes the remedy meaningful. It requires the court to award fees to the prevailing party "unless special circumstances would render such an award unjust."

Noting that the courts "have taken an extremely liberal view on nearly every interpretative question that has arisen thus far under 1988 . . . .," *Gates v. Collier,* 616 F.2d 1268, 1275 (5th Cir.1980), this Court holds that Williams is entitled to recover attorneys' fees.

Bolt argues that Williams is not a "prevailing party" since the jury concluded that Deputy Bolt acted in good faith. However, as noted in Section II and III of this opinion, the good faith defense was submitted only in relation to the section 1983 claim. Once again, it is significant that the district court rendered judgment for Williams based upon his successful state pendent tort action. In *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 2576 n. 15, 65 L.Ed.2d 653 (1980), the Supreme Court intimated that a party prevailing on a substantial claim that is pendent to a civil rights claim is entitled to a recovery of attorney's fees when the civil rights claim and the pendent claim arise out of a common nucleus of operative facts. This Circuit, along with other circuits, has followed the Supreme Court's di-

rection. *See, e.g., Gibbs v. Town of Frisco City, Alabama,* 626 F.2d 1218 (5th Cir.1980); *Lund v. Affleck,* 587 F.2d 75, 76–77 (1st Cir.1978); *Seals v. Quarterly County Court,* 562 F.2d 390, 393–94 (6th Cir.1977); *Bond v. Stanton,* 555 F.2d 172, 174 (7th Cir.1977), cert. denied, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978); and *Kimbrough v. Arkansas Activities Association,* 574 F.2d 423, 426 (8th Cir.1978).

These cases demonstrate that the federal courts are aware of the fact that often a court will affirm a judgment on a pendent, noncivil rights claim when to do so will allow it to avoid an unnecessary decision on a difficult constitutional issue. For example, in this case, this Court has refused to decide whether the good faith defense was improperly rejected by the district court since Williams would recover compensatory damages under the pendent claim, regardless of this Court's decision on the good faith issue. Moreover, by allowing a recovery of attorneys' fees "the congressional goal of encouraging suits to vindicate constitutional rights [is furthered] without undermining the well-settled judicial policy of avoiding unnecessary decisions [on] important constitutional issues." *Maher,* 100 S.Ct. at 2577.

### B.   Amount of Attorneys' Fees Due

By way of cross-appeal, Williams maintains that the district court abused its discretion by making an inadequate award of attorneys' fees. At the outset, it should be noted that the district court recognized the need for the guiding hand of counsel and appointed an attorney to represent Williams under 28 U.S.C. § 1915(d). *See* District Court's Orders Appointing Counsel, Aug. 29 and Oct. 30, 1979.

After concluding that Williams was a "prevailing party" under section 1988, the district court embarked upon a determination of the amount of attorneys' fees due. The evidence presented to the district judge by Williams' attorneys indicated that they had devoted 400 hours to Williams' case.

---

**2.** This Court notes, however, that the district court judge did not have the illumination on the

good faith issue provided by *Harlow* when he submitted the charge to the jury.

Additionally, the district court noted that the customary hourly rate for attorneys of equal experience ranged from $50 to $60 per hour, and that customary fees in this area ranged from $3000 to $5000. However, the district court concluded that the 400 hours devoted to Williams' case was excessive, and, hence, Williams' attorneys were awarded only $2500 as attorneys' fees. Surprisingly, the district judge made the following statement in his opinion: "The court is aware that such fee award fails to fully compensate Williams' counsel for their time, but would hope that the experience gained would prove beneficial."

In *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), this Court listed the following factors as the relevant considerations to be used by a district court in awarding attorney's fees:

> (1) The time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee [for similar work in the community], (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Although each of the *Johnson* factors is significant, recent decisions by this Court indicate that four of the factors are of special importance: (a) the time and labor involved, (b) the customary fee, (c) the amount involved and the results obtained, and (d) the experience, reputation, and ability of counsel. *See Mitchell v. Scheepvaart Maatschappij Trans-Ocean*, 579 F.2d 1274, 1281 n. 10 (5th Cir.1978); *Rainey v. Jackson*

*State College*, 551 F.2d 672, 677 (5th Cir. 1977).

### 1. The Time and Labor Involved and the Customary Fee

As noted previously, the district court concluded that the 400 hours expended by Williams' attorneys in vindicating his rights were excessive. The record clearly demonstrates that significant pretrial preparation was conducted by Williams' attorneys. Williams' attorneys filed two sets of interrogatories and two motions to produce, took six depositions of potential witnesses, sent letters and questionaires to six potential eyewitnesses incarcerated in the Texas Department of Corrections, interviewed three inmates in the Dallas County Jail, and reviewed several documents produced by Deputy Bolt and other deponents. Additionally, the hours of time spent by Williams' attorney in preparing this case included the necessary and reasonable hours required to draft the aforementioned documents, attend hearings on discovery matters, research the law in this burgeoning area of the law, review depositions, prepare questions for witnesses, and devise trial strategy.[3] No serious contention can be made that these activities are not necessary to adequately prepare for a jury trial—in this case, a jury trial that lasted three days.

Even if it be considered that Williams' attorneys spent an immoderate amount of time on some of these matters,[4] the record demonstrates that the district court limited the attorneys' fees award in a dramatic fashion. An attorney produced as an expert witness on civil rights cases testified that "something in the magnitude of 220 hours would have been about right." However, even if this Court assumes a $50 hourly rate—the least amount recognized by the district judge as a reasonable and customary fee—the $2500 attorneys' fee

---

**3.** It is noted that the district court judge was presented with detailed records of the time spent by Williams' counsel and the matters upon which the time was spent. *See* Record, vol. 1, at 36–A and exhibits attached thereto.

**4.** It is noted that the 400 hours claimed by Williams' counsel was time actually expended. Williams' counsel kept track of their time in a prudent manner and presented the district court with detailed time records. Record, vol. 1, at 36–A and exhibits attached thereto.

award would reflect an expenditure of only fifty hours. The preparation undertaken in this case and the performance of a three day jury trial would appear to require much more than fifty hours. Although such an award would not alone lead this Court to reverse the district court's award of attorneys' fees, when taken in connection with the factors discussed below, it is apparent that the district court abused its discretion by making the instant award.

2. *The Amount and the Results Obtained and the Experience, Reputation, and Ability of the Attorneys*

As noted previously, the small award of attorneys' fees could be appropriate if other circumstances supported the district court's limiting of the amount obtained by multiplying the customary hourly rate by the reasonable time actually expended by Williams' attorneys. However, although Williams' monetary recovery was relatively small, it is clear that the attorneys succeeded in vindicating Williams' established constitutional rights. The jury's response to Special Issue 1 clearly indicates that Williams' constitutional protections were infringed. Additionally, it is difficult to place a monetary amount upon the benefit that the public receives when public officials are reminded that acts of unwarranted violence will not go unnoticed in the American system of justice. The results in this case, obtained as a result of the attorneys' efforts, do not appear to be as characterized by the district court, which placed undue emphasis on the modest money damages that were found by the jury. As perceived correctly, Williams' counsel not only prevailed in the instant case, but succeeded in vindicating the established, important constitutional rights guaranteed to all citizens. Such a result furthers the policies behind section 1983 and provides incentive for other victims of improper governmental conduct to seek redress pursuant to constitutional authority. The policies behind sec-

tion 1988 are compromised when a district court places undue emphasis upon the amount of the monetary recovery in arriving at its attorney's fees award. *See Basiardanes v. City of Galveston*, 682 F.2d 1203 at 1220 (5th Cir.1982) (". . . an attorney's fees award may be supported by nominal damages since the successful claim serves to vindicate constitutional rights.").

According to *Johnson,* an award of attorney's fees can be limited according to the experience,[5] reputation, and ability of the attorneys. However, as the Court noted in *Johnson,* "If a young attorney demonstrates skill and ability, he should not be penalized for recently being admitted to the bar." *Johnson,* 488 F.2d at 719. In the instant case, the district judge noted that Williams' attorneys ". . . handled the case in a very competent manner . . . ." Furthermore, the district court closed its opinion with the following statement: "The prosecution of this action by Williams' counsel who volunteered their services with little hope of remuneration represented selfless advocacy in the best tradition of the bar, which fact the court here wishes to publicly acknowledge."

The record before this Court bears no witness to the fact that Williams' counsel volunteered their services. What the record does bear witness to is the fact that Williams' counsel was appointed by the district court judge—and that the attorneys responded fully to their obligation. Further, this Court perceives absolutely no possible indication that appointed counsel entered upon their duties "with little hope of remuneration." What does appear clearly from the record before the Court is that appointed counsel undertook the responsibility of the court's appointment in the highest traditions of the bar and provided quality professional services to their client. The record demonstrates that Williams' attorneys actively and vigorously litigated this matter in every apparent anticipation of a recovery, which did, in fact, occur.

---

**5.** The record demonstrates that one of Williams' appointed counsel graduated from law school in 1977. As Williams' counsel conceded in their presentation of their experience, they are not seasoned trial lawyers. However, the hourly rates claimed reflected their lack of substantial experience.

Hence, having vindicated Williams' rights, the attorneys are entitled to reasonable recompense for their services. The articulated appreciation of the district judge is no substitute for the ends sought in section 1988.

This Court must hold that the district court abused its discretion in awarding the attorneys' fees reflected in the district court's judgment. Section 1988 was enacted in a clear, commendable attempt to encourage the initiation of civil rights actions that would not have been undertaken by most attorneys, due to the fact that a large monetary recovery is generally unlikely. Thus, when members of the bar, designated by the court as attorneys for *pro se* applicants, undertake their responsibilities vigorously, set aside their more remunerative practices, and champion the rights of the indigent in an effective, selfless, and self-sacrificing manner, the district court should not impede the policies behind section 1988 by making an inadequate award of attorney's fees. In other words, when attorneys respond to the directives of the district court and prevail by vindicating the *pro se* applicant's rights, the district court abuses its discretion by making an award that discourages attorneys from, or even penalizes them for, representing the *pro se* applicant.

Finally, it should be noted that the district court concluded that the attorneys' fees should be paid by Deputy Bolt in his individual capacity. Thereafter, noting that the hardship imposed upon Bolt was a relevant factor in awarding attorneys' fees, the district court stated that it had considered Bolt's inability to pay a large award of attorneys' fees in reaching its award.

Since this Court concludes in the following discussion, that the award of attorneys' fees should be paid by the County, this Court must conclude that the district court erred in considering Deputy Bolt's inability to pay a substantial award of attorneys' fees in setting its award. Hence, this Court holds that the district court abused its discretion in awarding an inadequate amount of attorneys' fees and remands this case for a proper award of attorneys' fees,[6] which should include the reasonable and necessary costs incurred in this appeal.

### C. Liability for Attorneys' Fees

In his final ground of error, Deputy Bolt contends that the district court erred in awarding attorneys' fees against Bolt in his individual capacity. The district court concluded that the award of attorneys' fees should be paid by Bolt in his individual capacity since the County was not named as a party and since Bolt was, in the district court's view, sued only in his individual capacity.

Section 1988 permits a district court to award attorney's fees against a county when a plaintiff prevails in a suit brought pursuant to section 1983. The eleventh amendment is no longer a bar to an award of attorney's fees against a state governmental unit. *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). Moreover, it appears to be well-settled law that an award may lie against the governmental unit even if it is not named as a party in the litigation.[7] *See Hutto v. Finney,* 437

---

**6.** In determining the amount of attorneys' fees due upon remand, the district court should engage in a basic three-part analysis: (1) the district court should determine the reasonable amount of hours actually expended by counsel; (2) the district court should determine the customary fee received for similar services in the community; and (3) only after multiplying the reasonable time spent by the customary fee should the district court, if it chooses to do so, discount the award pursuant to the other *Johnson* factors. *See Copper Liquor, Inc. v. Adolph Coors Co.,* 624 F.2d 575 (5th Cir.1980).

**7.** Even though the County was not named as a party, it should be noted that Deputy Bolt was

represented by the Dallas District Attorney's office pursuant to Tex.Rev.Civ.Stat.Ann. art. 332c § 2, which provides:

> In any suit instituted by a non-political entity against an official or employee of a county, the district attorney of the district in which the county is situated or the county attorney or both, shall, subject to the provisions contained in Section 3, represent the official or employee of the county *if the suit involves any act of the official or employee while in the performance of public duties.* Tex.Rev.Civ.Stat.Ann. art. 332c § 2 (Vernon Supp.1982) (emphasis added).

U.S. at 694, 98 S.Ct. at 2575; *Barrett v. Thomas,* 649 F.2d 1193, 1201–02 (5th Cir. 1981); *Universal Amusement Co. v. Hofheinz,* 616 F.2d 202, 204 (5th Cir.1980); *McNamara v. Moody,* 606 F.2d 621, 626 (5th Cir.1979), *cert. denied,* 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980); *Morrow v. Dillard,* 580 F.2d 1284, 1299 n. 18 (5th Cir.1978); and *Miller v. Carson,* 563 F.2d 741, 755 (5th Cir.1977).

In the instant case, Williams initiated his action against Deputy Bolt under section 1983. However, Bolt contends, and the district court concluded, that he was sued only in his individual capacity. This Court disagrees. Williams initiated his initial complaint alleging that Deputy Bolt, as a state actor and an employee of the Dallas County Jail, deprived him of his constitutional rights while engaged in the furtherance of his duties. Additionally, it is clear that Deputy Bolt was on duty and responding to the orders of his superior, Officer Riggins, when he encountered Williams. This is not a case in which the tort did not arise out of the government employee's performance of his duties. Although Deputy Bolt arguably may have exceeded his authority by using excessive force, it has long been settled that he was still acting in an official capacity. *See Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

It is significant that Williams' original complaint was filed *pro se.* Even though Williams may not have used the words "in his official capacity," [8] it is apparent from the nature of his complaint that Williams was complaining of Deputy Bolt's actions that occurred while he was acting as an officer for the County. Certainly, this Court should not deny attorneys' fees against the governmental entity just because a *pro se* plaintiff failed to use the "magic" words "in his official capacity." *See Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Moreover, the

district court, in charging the jury, instructed them that Deputy Bolt was a state actor for purposes of section 1983. Therefore, since Deputy Bolt was responding to the official directives of his superior at the time this incident occurred and since Deputy Bolt was a state actor for purposes of section 1983, this Court concludes that the award of attorneys' fees should lie against the County.

This holding is supported by the legislative history of section 1988. For example, the Report of the Senate Committee on the Judiciary on the Civil Rights Attorney's Fees Awards Act, then Senate Bill 2278, stated:

> ... As with cases brought under 20 U.S.C. § 1617, the Emergency School Aid Act of 1972, defendants in these cases are often State or local bodies or State or local officials. In such cases it is intended that the attorneys' fees, like other items of costs, will be collected either directly from the official, *in his official capacity, from funds of his agency or under his control, or from the State or local government (whether or not the agency or government is a named party).*

(footnotes omitted) (emphasis added). S.Rep. No. 1101, 94th Cong., 2d Sess. 5 (1976), *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5913.

Finally, this Court emphasizes that an award of attorney's fees against the governmental entity is not proper in every case in which one of its employees commits a tort. Section 1988 was not intended to encompass a case in which a tort judgment is obtained against a government employee who was not in the furtherance of his duties at the time that the incident occurred that gave rise to the judgment. To the contrary, section 1988 will allow a recovery of attorney's fees only when a plaintiff is properly classified as a "prevailing party" under section 1988.

---

**8.** As was noted in note 1, Williams' original complaint named Sheriff Carl Thomas as a defendant. It is clear from a review of the caption in Williams' original complaint that Sheriff Thomas was sued in his "afficial [sic] capacity." Moreover, the markings underneath Sheriff Thomas' name could be construed as ditto marks indicating that Bolt was also sued in his official capacity. Even if this is not the proper interpretation of these marks, this Court would still conclude that Bolt was sued in his official capacity for the reasons stated in the text.

The instant case, however, is not one in which a plaintiff sued an individual under a purely state cause of action. Not only did Williams prevail on a substantial claim brought pendent to his section 1983 action, but Williams received an affirmative finding from the jury demonstrating that Deputy Bolt violated his constitutional rights. As this Court has already noted, a plaintiff falls within the ambits of section 1988 when he prevails on a substantial pendent claim arising out of the same common nucleus of operative facts that gave rise to the section 1983 claim. Moreover, a plaintiff is entitled to attorney's fees under section 1988 if he secures an affirmative finding that demonstrates that his constitutional rights were violated, even though a finding of good faith is also returned by the jury. *See* Section IV(A) of this opinion and cases cited therein.

## V. *Conclusion*

This Court AFFIRMS the district court's award of $500 in compensatory damages, REVERSES the district court's inadequate award of attorneys' fees, REMANDS this case for a determination of the proper amount of attorneys' fees due, and holds that the attorneys' fees award lies against the County.