**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 97-20412
(Summary Calendar)
_____

LEE SCHAM; J. CHARLES WHITEFIELD,

                                                    Plaintiffs,

LEE SCHAM,

                                                    Plaintiff-Appellant,

RANDALL L. KALLINEN,

                                                    Movant-Appellant,

                              versus

DISTRICT COURTS TRYING CRIMINAL
CASES, HARRIS COUNTY TEXAS;
DOUG SHAVER, Administrative Judge;
GEORGE H. GODWIN; Judge; BRIAN RAINS,
Judge; CAROL DAVIES, Judge; WILLIAM
T. HARMON, Judge; MICHAEL WILKINSON,
Judge; DEBBIE MANTOOTH, Judge;
JEANNINE BARR, Judge; JAY W. BURNETT,
Judge; JAN KROCKER, Judge; H. LON
HARPER, Judge; DENISE COLLINS,
Judge; MICHAEL T. MCSPADDEN, Judge;
TED POE, Judge; JOE KEGANS, Judge;
MARY LOU KEEL, Judge; W. R. VOIGHT,
Judge; DOUG SHAVER, Judge; JIM
WALLACE, Judge; JIM BARR, Judge;
MARY BACON, Judge; CAPRICE COSPER,
Judge; LUPE SALINAS, Judge,

                                                    Defendants-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Texas
_____
August 7, 1998
Before WIENER, BARKSDALE, AND EMILIO M. GARZA, Circuit Judges.

WIENER, Circuit Judge:

In this civil rights action, Plaintiff-Appellant Lee Scham and his attorney before the district court, Movant-Appellant Randall L. Kallinen (collectively, "appellants"), appeal that court's denial of their application for attorneys' fees.  Finding that the court did not abuse its discretion in denying fees, we affirm.

I

FACTS AND PROCEEDINGS

In 1989, the administrative judge for the criminal district courts of Harris County, Texas, issued an order prohibiting the Harris County district clerk and sheriff from disclosing the "street addresses or telephone numbers of any defendant in any case [pending in the courts] until an attorney is hired by the defendant or an attorney is appointed by the court to represent said defendant."  This order was designed to limit direct mail solicitation from criminal defense attorneys to criminal defendants.  Scham, a criminal defense attorney practicing in Harris County, filed suit in federal court pursuant to 42 U.S.C. § 1983 against the Harris County district courts trying criminal cases and twenty-two criminal judges (collectively, "appellees"), seeking an injunction prohibiting enforcement of the order.  He alleged that the order violated his First Amendment right to free speech and his substantive and procedural due process rights and right to equal protection under the Fourteenth Amendment.  Scham

2

also raised a supplemental state law claim for violation of the Texas Open Records Act.[1]

The district court granted summary judgment in favor of Scham, holding that appellees did not have authority under Texas state law to issue the order, i.e., that their actions were ultra vires, and that the order was therefore void. The court noted that Scham had a federal constitutional right not to be deprived of information based on a void order, but specifically avoided ruling on his federal civil rights claims, concluding that federal court doctrine required that it rule first on the dispositive state law claim. The court issued a permanent injunction against enforcement of the order.

Scham subsequently filed a Bill of Costs and Motion for Attorneys' Fees pursuant to 42 U.S.C. § 1988, seeking over $624,000. Without articulating its reason, the district court denied the application for fees in its entirety. The court also denied Scham's motion for reconsideration, seeking over $20,000,000, and his request for findings of fact and conclusions of law. This appeal followed.

II

ANALYSIS

A.  Standard of Review

We review a district court's denial of attorneys' fees for an

---

[1]Tex. Rev. Civ. Stat. Ann. art. 6252-17(a) (Vernon Supp. 1990).

abuse of discretion.[2]  Underlying factual determinations, such as whether a party is a "prevailing party," are reviewable only for clear error.[3]

B.    Applicable Law

The Civil Rights Attorneys' Fees Act provides that "[i]n any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."[4]  "To attain prevailing party status the plaintiff must show (1) the goals of the lawsuit were achieved, and (2) the suit caused the defendants to remedy the [defendants' behavior]."[5]  Once the plaintiff has established his status as a "prevailing party," a district court's discretion to deny attorney's fees and costs is "extremely narrow."[6]  "Absent special circumstances that would render such an award unjust, a prevailing plaintiff should be awarded § 1988 fees 'as a matter of course.'"[7]

Appellees maintain that Scham is not a prevailing party for purposes of § 1988.  First, they argue that fees are not warranted,

---

[2]Cooper v. Pentecost, 77 F.3d 829, 831 (5th Cir. 1996).

[3]Id.

[4]42 U.S.C. § 1988.

[5]Watkins v. Fordice, 7 F.3d 453, 456 (5th Cir. 1993).

[6]Espino v. Besteiro, 708 F.2d 1002, 1005 (5th Cir. 1983).

[7]Id. (quoting Gates v. Collier, 616 F.2d 1268, 1275 (5th Cir. 1980)) (emphasis in original).

as the district court granted summary judgment on the narrow state law ground that appellees' actions were <u>ultra vires</u>.  Accordingly, they submit, Scham did not succeed on any federal claim.[8]  Next, appellees assert that Scham's success was only limited, and thus does not justify an award of fees:  "[A] technical victory may be so insignificant . . . as to be insufficient to support prevailing party status."[9]

We find both these arguments unavailing.  "A plaintiff prevails if the relief obtained, through judgment or settlement, materially alters the defendants' behavior in a way directly benefitting the plaintiff."[10]  In this case, Scham's suit satisfied both prongs of the test for a prevailing party:  (1) the goal of the lawsuit — a permanent injunction prohibiting the enforcement of the order — was achieved; and (2) the lawsuit caused the appellees to alter their behavior.  Furthermore, we have previously held that a plaintiff may be deemed a prevailing party if he prevails on a supplemental state law claim which arises from a common nucleus of fact with his federal constitutional claims, if

---

[8]In his motion for summary judgment, Scham did argue that appellees were without authority to issue the order.  Appellees insist, however, that whereas Scham made this assertion in furtherance of his federal claims, the district court granted summary judgment on state law grounds — thus depriving Scham of prevailing party status.  Scham never mentioned his supplemental Texas Open Records Act claim in his summary judgment motion.

[9]<u>Texas State Teachers Assoc. v. Garland Indep. Sch. Dist.</u>, 489 U.S. 782, 792 (1989).

[10]<u>Watkins</u>, 7 F.3d at 456.

the court chooses to avoid ruling on the constitutional issues.[11] As such, appellants are entitled to attorneys' fees pursuant to § 1988 unless there are special circumstances dictating the denial of fees.

We conclude there are special circumstances that justify the district court's denial of fees in this case. Other circuits have held that "a district court may, in its discretion, deny a request for attorneys' fees in its entirety when the request, submitted pursuant to 42 U.S.C. § 1988, is so excessive it 'shock[s] the conscience of the court.'"[12] We find the reasoning of the Seventh Circuit particularly persuasive in this context:

> If, as appellant argues, the court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such conduct would be reduction of their fee to what they should have asked for in the first place. To discourage such greed a severer reaction is needful.[13]

This case presents just such a situation. It is well-settled that the party seeking attorneys' fees bears the burden of proving

---

[11]Williams v. Thomas, 692 F.2d 1032, 1036 (5th Cir. 1982), cert. denied, 462 U.S. 1133 (1983).

[12]Fair Housing Council v. Landow, 999 F.2d 92, 96 (4th Cir. 1993) (quoting Sun Publ'g Co. v. Mecklenburg News, Inc., 823 F.2d 818, 819 (4th Cir. 1987)); see also Lewis v. Kendrick, 944 F.2d 949, 957-58 (1st Cir. 1991); Brown v. Stackler, 612 F.2d 1057, 1059 (7th Cir. 1980).

[13]Brown, 612 F.2d at 1059.

6

the reasonableness of his requested fee award,[14] and that he may not be compensated for time that is excessive, duplicative, or inadequately documented.[15] During the short, one-year pendency of this case, discovery was limited, and there were no meetings of the parties or attorneys, no settlement negotiations, no mediation, no court appearances, and no trial. The facts were stipulated. Nevertheless, appellants seek compensation for over 936 hours of work. This includes such excessive entries[16] as (1) 24.3 hours for the open records claim which Scham pleaded in his complaint but never mentioned in his motion for summary judgment and apparently abandoned; (2) 9.7 hours and the cost of an investigator for service on the Texas Attorney General, who was not a party to the suit and was not yet representing appellees, even though Tex. Civ. Prac. & Rem. Code § 30.004 provides that notice upon the attorney general requires only that "a copy of the petition shall be mailed to the attorney general at the attorney general's office in Austin, Texas, by United States Postal Service certified mail, return receipt requested;" and (3) 2.5 hours on a one page joint motion for Kallinen to proceed pro hac vice which was later withdrawn when he was admitted to the district court.

---

[14]Von Clark v. Butler, 916 F.2d 255, 259 (5th Cir. 1990).

[15]Watkins, 7 F.3d at 457.

[16]Appellant Kallinen submitted only daily totals of his time spent on this case, failing to break down those totals by task. As such, in most instances it is impossible to ascertain how much time he spent working on any individual aspect of the case.

7

Furthermore, although the relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits,[17] appellant Kallinen made no effort to show what his services are worth in Houston, and in fact provided no resume or other evidence of his experience.[18] The evidence submitted by appellees shows that the usual rate for a solo practitioner with two years or less experience is $100 according to the State Bar of Texas 1995 Attorney Billing & Compensation Survey Hourly Rate Report. Nevertheless, appellants seek an award of $375 an hour, with an enhancement to $750 an hour, for a lawsuit that was filed when counsel had only been licensed one year.[19] This sum is so clearly excessive that it "shocks the

---

[17]Alberti v. Klevenhagen, 896 F.2d 927, 931 (5th Cir.), vacated in part on other grounds, 903 F.2d 352 (5th Cir. 1990).

[18]The only evidence submitted by Kallinen regarding his legal experience or a reasonable hourly rate was a single affidavit by an attorney with whom he had worked, averring that Kallinen's work was above average and merited $350 per hour.

[19]In their application for fees to the district court, appellants attempted to justify their steep hourly rate according to the factors we articulated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). These factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney resulting from acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Id. at 717-19. In particular, appellants stress that this case was highly undesirable, as it required Kallinen to sue twenty-two

8

conscience" of the court.

We realize that the district court's remedy here is extreme, but we are reluctant to reverse inasmuch as doing so would serve to condone and encourage such outrageous petitions. As the Fourth Circuit has reasoned, appellants in this case

> intended to submit an outrageously excessive fee petition in the hope that the district court would at least award some, preferably high, percentage of the requested fees. We believe Congress did not intend to foster such gamesmanship when it enacted the Civil Rights Attorney's Fees Act of 1976. Rather, the clear intent of Congress was to provide reasonable fees to prevailing parties. Our decision today seeks to further that purpose by encouraging attorneys at the outset to request only reasonable fees and to provide the necessary assistance to the district court for determining a reasonable fee.[20]

As such, we hold that the district court did not abuse its discretion in denying attorneys' fees under the special circumstances presented by this case. Nevertheless, we once again caution district courts that "[t]o avoid the risk of remand the district court should explain with a reasonable degree of specificity the findings and reasons"[21] upon which an award of

---

sitting judges in the jurisdiction where he practices law. Appellants also point out that Kallinen was forced to turn down other profitable employment to prosecute the case, and emphasize their high level of success. Moreover, they assert that inasmuch as many criminal defendants will now use attorneys they learn about through direct mail solicitation instead of relying on court-appointed counsel, their suit saved the state of Texas millions of dollars. On appeal, however, they raise none of these arguments, but rather insist that the sole issue is whether they are entitled to fees at all, not the quantum of those fees.

[20]Landow, 999 F.2d at 98.

[21]Von Clark, 916 F.2d at 258.

9

attorneys' fees —— or the denial of such an award —— is based.

III

CONCLUSION

For the foregoing reasons, we hold that the district court did not abuse its discretion in denying attorneys' fees and costs to appellants.  Accordingly, the judgment of the district court is, in all respects,

AFFIRMED.