Opinion issued April 7, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00384-CV

———————————

Carl R. Pruett and National American Insurance Company, Appellants

V.

The Harris
County Bail Bond Board, Appellee



 



 

On Appeal from the 125th District Court 

Harris County, Texas



Trial Court Case No. C-2002-09290A

 



 

O P I N I O N

This appeal involves a challenge to an
award of attorneys’ fees pursuant
to the Civil Rights Attorneys’ Fees Award Act (42 U.S.C. § 1988) arising out of claims made against the Harris County Bail
Bond Board under Title 42, Section 1983 of the United States Code. Appellants,
Carl R. Pruett and National American Insurance Company (collectively, “Pruett”),
bring two issues challenging the adequacy of the trial court’s award.  We also consider the trial court’s denial of
Pruett’s motion to recuse.  We reverse
and remand.

BACKGROUND

The Board Enacts Rules Regarding Bond
Solicitation

In the 1990s, the Harris County Bail Bond Board (“the
Board”) began receiving complaints concerning bail bond solicitation practices
in the County.  Specifically, there were
complaints about bondsmen (1) contacting defendants with unexecuted warrants
thereby “tipping off” the defendants about their impending arrests and
increasing risks of flight, destruction of evidence, and harm to crime victims
and police officers; and (2) soliciting business by telephone during
non-business hours.

In response, the Board passed two local rules governing the
solicitation of bail bond business in Harris County.  Rule 24 prevented the solicitation of bond
business from a defendant with an outstanding warrant.  Rule 25 placed time restrictions on the
solicitation of bond business by prohibiting solicitation of bond business (1)
within the first 24 hours after an arrest; and (2) during non-business
hours.  

 

The State Court Trial Proceedings

Soon thereafter, the Board suspended the bonding license of
appellant, Carl Pruett, for violating Rules 24 and 25.  Pruett and National American Insurance
Company, the insurance and surety company for which Pruett acted as an agent,
filed suit against the Board requesting declaratory and injunctive relief.  The trial court granted a temporary
restraining order and then a temporary injunction to prevent the Board from
enforcing its rules.  

The Interlocutory Appeal before this
Court

The Board filed an interlocutory appeal, which this Court
dismissed after the trial court granted Pruett a permanent injunction, thereby
mooting the interlocutory appeal.  See Int’l Fid. & Ins. Co. v. Pruett,
No. 01-02-00438-CV, 2002 WL 31839202 (Tex. App.—Houston [1st Dist.] Dec. 19,
2002, no pet.) (not designated for publication).

The 2nd Appeal before this Court

          The Board then appealed the permanent
injunction to this Court.  This Court
upheld the constitutionality of Rule 24 and the portion of Rule 25 that
prevented the solicitation of bond business during non-business hours.  However, this Court concluded that the
portion of Rule 25 that prohibited bondsmen from soliciting businesses within
the first 24 hours after an arrest was an unconstitutional restraint on free
speech.  See Harris Cnty. Bail Bond Bd. v. Pruett, 177 S.W.3d 260 (Tex.
App.—Houston [1st Dist.] 2005, aff’d in part, rev’d in part, 249 S.W.3d 447
(Tex. 2008).

The Appeal to the Texas Supreme Court

The Board then appealed to the supreme court, which
ultimately affirmed this Court’s holding as to the constitutionality of the “non-business
hours” portion of Rule 25 and the unconstitutionality of the portion of rule 25
that prohibited the solicitation of bond business within the first 24-hours
after arrest.  However, the supreme court
reversed this Court’s judgment as to the Rule 24, holding that its prohibition
against the solicitation of bond business from defendants with open warrants
was also an unconstitutional restriction on free speech. See Pruett v. Harris Co. Bail Bond Bd., 249 S.W.2d 447, 460–61 (Tex. 2008).  The
supreme court remanded the case to the trial court for further proceedings.

The Parallel Federal Court Proceeding 

At the same time the present case was pending in the state
court, a parallel proceeding was transpiring in the federal courts.  In the federal proceeding, Pruett and another
bondsman challenged the constitutionality of state statutes that had been
passed, which mirrored the Board rules that were the subject of the state court
case.  See Pruett v. Harris Cnty. Bail Bond Bd., 499 F.3d 403, 407–08 (5th Cir. 2007).  The
Fifth Circuit reached the same result as the Texas Supreme Court—it held that
the prohibitions against soliciting bond business when a warrant was
outstanding or within the first 24-hours after arrest were unconstitutional,
but that the prohibition against “after-hours” solicitation was valid.  Id.
at 416.  The Fifth Circuit also reversed
the trial court’s award of “nominal” attorney’s fees after considering and
rejecting the Board’s argument that “special circumstances” should preclude or
reduce the plaintiffs’ recovery of attorneys’ fees.  Id.
at 417–18.


The attorneys’ fee issue was remanded to the federal trial
court, and after an evidentiary hearing, the federal trial court awarded Pruett
$588,462.83 in attorneys’ fees. Pruett v.
Harris Cnty. Bail Bond Bd., 593 F. Supp2d 944, 948 (S.D. Tex. 2008).  The Board did not appeal the attorneys’ fees
awarded in the federal case.

The Fee Hearing after Remand

After the Texas Supreme Court ruled
in his favor and remanded the state court case to the trial court, Pruett filed
his fee application.  The parties
stipulated that Pruett was a prevailing parties under 42 U.S.C. § 1988.  By
affidavit, the Board’s expert, Jay Aldis, testified that if the plaintiffs were
entitled to recover attorneys’ fees, the appropriate amount would be
$326,327.52, which was to be calculated at a rate of $330 an hour for David
Furlow, lead counsel for Pruett.  In
contrast, Furlow proffered two fee calculations:  $674,625.54 (at a $450 hourly rate for
Furlow) and $782,195.93 (at a $510 hourly rate for Furlow).  At the close of the fee hearing, the trial
court ruled as follows:

I
have considered all of the evidence in my file. 
At this time I will take judicial notice of the evidence that’s in the
file.  I have heard the arguments of
counsel, considering all of the orders that have come before this Court in this
case.  I am now prepared to make a
decision as to the reasonable and necessary attorney’s fees in this case and
that fee is $35,000, $10,000 for the original lawsuit, $10,000 for one appeal,
the next appeal is $10,000, and $5,000 for the appeal to the Texas Supreme
Court.  That’s the decision of the Court.  Gentlemen, you are excused.

 

The
Trial Court’s Findings of Fact and Conclusions of Law

 

The trial court
subsequently made the following findings of fact:

 1.  From
February 2002 through December 3, 2008, Thompson & Knight, LLP billed the
Plaintiffs, on an agreed hourly rate basis, a total of $434,697.60 for work
performed on Cause No. 2002-09290 and Cause No. 2002-09290-A.

 

2.  In their motion to recover attorney’s fees
the Plaintiffs requested an award of as much as $782,195.93 (almost 180 percent
of the billed amount).

 

3.  The amount of fees requested by the
Plaintiffs for the work performed in this case is so clearly excessive that it
shocks the conscience of the Court.

 

4.
The Court finds that, in order to discourage the filing of fee applications as
outrageous as the application in the instant case, the Plaintiffs’ attorney’s
fee award should be drastically reduced.

 

5.  The Court finds that, under the circumstances
present in this case, the sum of $35,000 should be awarded to the Plaintiffs as
reasonable attorney’s fees, i.e., $10,000 for the work performed in this Court,
$10,000 for the first appeal, $10,000 for the second appeal, and $5,000 for the
appeal to the Texas Supreme Court.

 

The Court also made the following conclusions of law:

 

1. Prevailing parties should
request only reasonable fees in civil rights cases.

 

2. The filing of outrageous
fee applications should not be condoned. 
Scham v. District Courts Trying Criminal Cases, 148 F.3d 54, 559
(5th Cir. 1998).

 

3.  The Court concludes that it is appropriate in
the instant case, in the exercise of the Court’s discretion, to drastically
reduce the fee award in order to discourage the filing of excessive fee
applications. 

 

PROPRIETY OF ATTORNEYS’ FEES
AWARD

 

In his first and second issues,
Pruett contends that the trial court abused its discretion in denying him
“almost all [attorneys’] fees in the absence of any special circumstances
warranting such punishment.”  Pruett
points out that the trial court’s award was just 10% of what the Board’s own
expert testified would be a reasonable fee.

Applicable
Law and Standard of Review

The Civil Rights Attorneys’ Fees
Act provides that “[i]n any action or proceeding to enforce a provision of [42
U.S.C. § 1983], the court, in
its discretion, may allow the prevailing party . . . a reasonable attorney’s
fee as part of the costs.”  42 U.S.C. §
1988.  The purpose of § 1988 is to ensure
effective access to the judicial process for people with civil rights
grievances.  Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S. Ct. 1933, 1937
(1983).  When a statute provides for
an award of attorneys’ fees, an award should be given unless “special
circumstances” render the award unjust.  Blanchard v. Bergeron, 489 U.S. 87, 89
n.1, 109 S. Ct. 939, 942 (1989).  Given
the strong policy behind § 1988 of
awarding fees to prevailing plaintiffs, defendants must make an “extremely
strong showing” of special circumstances to avoid paying attorneys’ fees, and
the trial court’s discretion to deny § 1988 fees is extremely narrow.  Pruett,
499 F.3d at 417.  “‘To avoid
the risk of remand the district court should explain with a reasonable degree
of specificity the findings and reasons’ upon which an award of attorneys’ fees—or the denial of such an award—is based.”  Scham v. District Courts Trying Criminal
Cases, 148 F.3d 554, 559 (5th Cir. 1998) (quoting Von Clark v. Butler, 916 F.2d 255, 259 (5th Cir. 1990)).  Determining a reasonable attorneys’ fee is a
matter committed to the sound discretion of the trial judge, but the judge’s
discretion is not unlimited.  Perdue v. Kenny A., 130 S. Ct. 1662,
1676 (2010).  It is essential that the
judge provide a reasonably specific explanation for all aspects of a fee
determination.  Id.  Unless such an
explanation is given, adequate appellate review is not feasible.  Id.

The
Lodestar Method

We begin by noting that attorneys’
fees under § 1988 are usually
determined by applying the “lodestar” method, which is a two-step process. Rutherford
v. Harris Cnty., 197 F.3d 173, 192 (5th Cir. 1999). First, the court
calculates the “lodestar,”
which is equal to the number of hours reasonably expended multiplied by the
prevailing hourly rate in the community for similar work. Id. The court
should exclude all time that is excessive, duplicative, or inadequately
documented. Watkins v. Fordice, 7 F.3d 453, 457 (5th Cir. 1993). Once
the lodestar
amount is calculated, the court may adjust it upward or downward based on the
twelve factors set forth in Johnson v. Ga. Highway Express, Inc., 488
F.2d 714, 717–19 (5th Cir. 1974).[1]   The lodestar amount is presumed to be a
reasonable attorneys’ fee.  Perdue, 130 S. Ct. at 1673.

However, the trial court did not apply
the lodestar method in this case. 
Instead, the trial court concluded that the fees “shocked the
conscience” and should be “drastically reduced.”

Scham v. District
Courts Trying Criminal Cases

          The Board argues that, because the
trial court could have denied attorneys’ fees entirely under the authority of Scham v. Dist. Courts Trying Criminal Cases,
it could also “drastically reduce” the fee award without regard to the lodestar
amount.  148 F.3d 554.  We disagree in this case.

          In Scham, the plaintiff successfully
challenged as ultra vires an order by
the Harris County administrative judge that prohibited the district clerk and
sheriff from disclosing the addresses and telephone numbers of criminal
defendants until an attorney was either hired or appointed. 148 F.3d at 556.  The case was pending for only one year and
discovery was limited.  Id. at 558.  There were no meetings of the parties or
attorneys, no settlement negotiations, no mediation, no court appearances, and
no trial.  Id.  The facts were
stipulated, and the case was resolved by way of a motion for summary
judgment.  Id. at 557, 558. 
Nevertheless, appellant’s counsel claimed in his fee request to have
worked on the case for 936 hours at $375 an hour, with an enhancement of the
lodestar to $750 an hour.  Id. at 558.  There was evidence at the record that the
usual rate for a solo practitioner with less than two years experience was $100
per hour, and plaintiff’s own expert testified that counsel’s work was worth
$350.  Id. at 558 n.18.  Plaintiff’s
expert made no attempt to show the value of his services in relation to others
in the community in which he practiced.  Id. at 558.  The Fifth Circuit held that
this request was so clearly excessive that it “shock[ed] the conscience” of the
Court.  Id. at 558–59. Accordingly, the
trial court did not abuse its discretion in denying an award of any attorneys’
fees at all under the special circumstances presented by the case.  Id.
at 559. To hold otherwise, the court believed, would be to “condone and
encourage such outrageous petitions.”  Id.

Analysis

          We begin by
noting that the trial court in this case did not deny all attorneys’ fees—instead,
it “drastically reduced” them.  The Fifth
Circuit has questioned whether “special circumstances” can be used to justify
the reduction, rather than elimination, of attorneys’ fees.  See
Pruett, 499 F.3d at 418 (“Even if defendants had made an extremely strong
showing that rose to the level of special circumstances, this circuit has never
held that such ‘special circumstances’ can serve to reduce, and not fully
eliminate, an award of fees.”). 

          Furthermore,
even if special circumstances can be used to justify the reduction rather than
elimination of an attorneys’ fee award, the Board has not presented an
“extremely strong showing” of such special circumstances in this case.  Here, the trial court’s findings of fact and
conclusions of law indicate that the trial court found that the fee request
“shock[ed] the conscience” of the court because the amount requested in the fee
application was almost 180 percent of the amount plaintiffs’ counsel actually
billed his clients.  The trial
court’s assumption seems to be that the amount an attorney charges the
plaintiff determines what is a “reasonable” fee under § 1988.  Such is not the case.

          The
Supreme Court addressed the effect of private fee arrangements in determining a
reasonable fee in the case of Blanchard
v. Bergeron, 489 U.S. 87, 109 S. Ct. 939 (1989).  In Blanchard,
the trial court reduced the attorneys’ fees under the lodestar calculation
because it determined that a contingency fee agreement served as a cap on the
amount of attorneys’ fees to be awarded. 
489 U.S. at 90, 109 S Ct. at 942–43. 
The Supreme Court reversed, holding that a private fee arrangement is
not a cap on what is a reasonable fee, but is merely one factor to be
considered in determining the reasonableness of the fee under the lodestar
method.  489 U.S. at 93, 109 S. Ct.
944.  In so holding, the Court stated:

Should a fee
agreement provide less than a reasonable fee calculated [using the lodestar
method], the defendant should nevertheless be required to pay the higher
amount.  

 

Thus it is that
a plaintiff’s recovery will not be reduced by what he must pay his
counsel.  Plaintiffs who can afford to
hire their own lawyers, as well as impecunious litigants, may take advantage of
this provision.  And where there are
lawyers or organizations that will take a plaintiff’s case without
compensation, that fact does not bar the award of a reasonable fee.  All of this is consistent with and reflects
our decisions in cases involving court-awarded attorney’s fees.

 

489 U.S. at 93–94, 109 S. Ct. at
944–45.  Blanchard makes it clear that private fee arrangements do not
determine whether a fee is reasonable, and that a private fee arrangement is
not a cap on the reasonable fee that may be awarded.  That Pruett’s counsel billed them less than
they requested in their fee application does not mean that the fee requested is
unreasonable.  It could be that counsel
had agreed to work for a lower hourly wage so that plaintiffs could afford to
proceed with the litigation with the hope of recovering more later.  Indeed, the record shows that Furlow billed
Pruett at a discounted rate from that usually charged by his firm.

          The
Board also argues that the fee request was also unreasonable because it asked
for attorneys’ fees at current rates, while counsel actually billed Pruett at
lower rates.  The Board contends that
“[t]here simply was no reasonable justification in this case for the Plaintiffs
to seek to recover more than they paid their own counsel[.]”   

And, as we have
already held, the private fee arrangement between counsel and plaintiff does
not determine the reasonableness of an attorneys’ fee.  A private fee arrangement between the
plaintiff and his attorney is but one factor to consider in conducting a
lodestar analysis.  See Blanchard, 489 U.S. at 93, 109 S. Ct. at 944.  Similarly, compensation at current, rather
than historic rates may be available as an enhancement to the lodestar amounts
in cases that involved protracted litigation. 
See Missouri v. Jenkins, 491
U.S. 274, 283–84, 109 S. Ct. 2463, 2469 (1989). 
Partial success is also a factor that may be used to reduce an
attorneys’ fee award under the lodestar method. 
See Pruett, 499 F.3d at 418.

However, neither the
existence of a private fee arrangement at less than that requested, nor a
request for fees at current rates, nor partial success is a “special
circumstance” justifying the abandonment of any lodestar analysis and the
effective denial of attorneys’ fees. 

The trial court in
this case made no other findings of fact or conclusions of law that would
explain the “special circumstances” making the fee request so unreasonable such
that the conscience of the court was shocked. 
The Supreme Court and the Fifth Circuit have both admonished trial
courts “to provide a
reasonably specific explanation for all aspects of a fee determination.”  Perdue, 130 S Ct. at 1676. (2010). Unless
such an explanation is given, adequate appellate review is not feasible.  Id.; Scham, 148 F.3d at 559 (holding that to
avoid remand, district court should explain with “reasonable degree of
specificity” reasons for denial of attorneys’ fees).  Because the only reason given by the trial
court to justify its award is a lodestar factor to be considered, but does not
determine the reasonableness of a fee request, we cannot conclude based on that
reason alone that the amount of fees requested is so clearly
excessive that it shocks the conscience. 
Because the trial
court did not provide any other reason for its decision or conduct a lodestar
analysis, we are unable to adequately address on appeal the reasonableness of
the amount awarded.  

Accordingly, we sustain Pruett’s first and second issues on
appeal.

 

 

DENIAL OF MOTION TO
RECUSE

After the fee hearing, but before a judgment was signed,
Pruett filed a motion to recuse the trial judge.  The motion was referred to the presiding
judge of the administrative district [“the administrative judge”] who, after an
evidentiary hearing on the motion, denied it. 
In their third issue on appeal, Pruett contends the administrative judge
erred in denying his motion to recuse.

Standard of Review and Applicable Law

Recusal is warranted when: (1) the
trial judge’s impartiality might reasonably be questioned, or (2) the judge has
a personal bias or prejudice concerning a party or the subject matter of the
case. Tex. R. Civ. P. 18b(2)(a)–(c). We review the denial of a motion to recuse for abuse of discretion. Vickery
v. Vickery, 999 S.W.2d 342, 349 (Tex. 1999); see also Tex. R. Civ. P. 18a(f) ( “If the motion [to recuse] is
denied, it may be reviewed for abuse of discretion on appeal from the final judgment.”).  The test for an abuse of discretion is
whether the trial court acted without reference to any guiding rules or
principles, or acted arbitrarily or unreasonably.  Carmody
v. State Farm Lloyds, 184 S.W.3d 419, 420–21 (Tex. App.—Dallas 2006, no
pet.); see Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985).

 

 

Facts Adduced at Recusal Hearing

          Felix Michael Kubosh was a co-plaintiff
with Pruett in the parallel federal litigation and was represented by Pruett’s
counsel, David Furlow, and his firm Thompson & Knight in that
proceeding.  Kubosh was in the audience
at the fee hearing in the present case, and after Judge Kyle Carter court
announced his ruling setting Pruett’s fees at $35,000, Kubosh saw a
white-haired gentlemen go over and shake the hand of the Board’s counsel, Mr.
Maher.  Kubosh also saw “a lot of
congratulatory gestures,” but he did not testify that he overheard any
conversations.  Kubosh identified the
white-haired gentleman as Judge Carter’s father, Eric Carter.  Kubosh later described this exchange to
Furlow, who began looking into “why [Eric Carter] would have such an interest
in the case.”

          Furlow soon learned about a case that
his firm had been involved in styled Essex
Crane Rental Corp. v James McPherson, Sr., No. 2002-62464, in the 151st
District Court of Harris County (“the Essex Litigation”), and that involved one
of his former law partners, Tom Sankey. 
In the Essex Litigation, Sankey, a former Thompson & Knight partner,
sued Eric Carter, alleging that Carter engaged in sham transfers of assets to
perpetrate a fraud on Essex Crane Rental Corporation.  The Essex Crane litigation was filed before
Sankey began working at Thompson & Knight in July 2006, and Sankey took the
case with him when he left the firm in February 2007.  

          Furlow also presented evidence of
Judge Carter’s participation in the Essex Litigation before taking the bench,
which he contended showed Judge Carter’s bias against Thompson &
Knight.  Specifically, Furlow argued that
in September 2006, Judge Carter stated in a deposition that the Essex Litigation
was “completely frivolous” and that he defended his father “on [his] own
nickel.”  In September 2006, Judge Carter
also requested sanctions against the plaintiff’s attorneys in the Essex
Litigation because the case was “filed in bad faith, [was] groundless, and
[was] brought for purposes of harassing Carter.”  In February 2007, around the time Sankey left
Thompson & Knight, Judge Carter on behalf of his father, filed a
counter-claim in the Essex Litigation against Sankey, personally. And, in May
2008, after Sankey left Thompson & Knight, Judge Carter filed an appellees’
brief in this Court on behalf of his father. 
In the appellee’s brief, Judge Carter argued that Sankey “invented a
vast conspiracy” and “attempted to manufacture circumstantial evidence to find
[Eric Carter and his co-defendant] guilty of conspiracy.”

          Furlow presented evidence that he had
never worked with Sankey while he was at Thompson & Knight and that he had
no knowledge of the Essex Litigation or Judge Carter’s involvement with
it.  Furlow also testified that one
associate, Kenny Corley, had done a minor amount of work on the bail bond case
and the Essex Litigation, but that his involvement in the bail bond case was
limited to proofreading some briefs and conducting limited research on First
Amendment issues.  Furlow was concerned
that the animosity in the Essex Litigation between Judge Carter, on the one
side, and Sankey and Corley, on the other side, may have affected Judge Carter’s
ability to remain unbiased against Thompson & Knight in the present case.

Analysis

          Pruett argues that (1) the extremely
low attorneys’ fee award, coupled with (2) the history between Judge Carter and
Thompson & Knight in the Essex Litigation “raises troubling issues of
extrajudicial bias.”  The Board responds
that Sankey brought the Essex litigation with him when he joined Thompson &
Knight, took it with him when he left less than one year later, and that Judge
Carter never filed claims against Thompson & Knight, but solely against
Sankey, individually.  The Board argues
that “it is not at all apparent why the rather brief involvement of this large
international law firm in the Essex Crane litigation would have engendered in
Judge Carter an extrajudicial bias against the entire firm and its other
clients.”

          We agree.  Even though there was acrimony between Judge
Carter and Sankey over the Essex Litigation, the administrative judge could
have reasonably concluded that there was insufficient evidence extending this
animosity to the firm that Sankey was a member of for less than a year.  That Eric Carter “congratulated” the Board’s
attorneys after the fee hearing is also no evidence of Judge Carter’s bias—no
conversation regarding the hearing was overheard, merely “congratulatory
gestures.”

          Having reviewed the recusal hearing
record, we do not conclude that the administrative judge acted arbitrarily or
unreasonably, or without any reference to guiding rules and principles, in denying Pruett’s motion to recuse.

          Accordingly, we overrule point of
error three.                     

CONCLUSION

          We reverse the
judgment of the trial court and remand for further proceedings.

 

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Alcala and Massengale.

 











[1]           The Johnson factors consist of the following: 

(1) the time and labor
required for the litigation; (2) the novelty and difficulty of the questions
presented; (3) the skill required to perform the legal services properly; (4)
the preclusion of other employment by the attorney due to acceptance of the
case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7)
time limitations imposed by the client or the circumstances; (8) the amount
involved and the result obtained; (9) the experience, reputation and ability of
the attorneys; (10) the “undesirability” of the case; (11) the nature and
length of the professional relationship with the client; and (12) awards in
similar cases. Johnson, 488 F.2d at 717–19.  The court, however, should note that many of
these factors are usually subsumed within the initial calculation of hours
reasonably expended at a reasonable hourly rate.  Hensley,
461 U.S. at 434 n.9, 103 S. Ct. at 1940.