# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-1077


**COLLETTE JOSEY COVINGTON AND JADE COVINGTON**

**VERSUS**

**MCNEESE STATE UNIVERSITY AND THE BOARD OF SUPERVISORS FOR THE UNIVERSITY OF LOUISIANA SYSTEM**


**\*\*\*\*\*\*\*\*\*\***
APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, DOCKET NO. 2001-2355, DIVISION G
HONORABLE MICHAEL CANADAY, PRESIDING
**\*\*\*\*\*\*\*\*\*\***


**SYLVIA R. COOKS**
**JUDGE**
**\*\*\*\*\*\*\*\*\*\***


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, Marc T. Amy,  Elizabeth A. Pickett, and Phyllis M. Keaty, Judges.

**AFFIRMED IN PART; REVERSED IN PART; AMENDED;**
**MOTION TO STRIKE PASSAGES GRANTED;**
**MOTION TO STRIKE REPLY BRIEF DENIED.**


**Amy, J., concurs in part, dissents in part, and assigns reasons.**

**Pickett, J., concurs in part, dissents in part, and assigns reasons.**

**James D. "Buddy" Caldwell**
**Attorney General**
**J. Michael Veron**
**J. Rock Palermo**
**Alonzo P. Wilson**
**Special Assistants Attorney General**
**Veron, Bice, Palermo & Wilson, LLC**
**721 Kirby Street**
**P.O. Box 2125**
**Lake Charles, LA 70602-2125**
**(337) 310-1600**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
        McNeese State University and the Board of Supervisors for the
        University of Louisiana System

**Seth Hopkins**
**1318 Dowling Street**
**Houston, TX  77003**
**(337) 540-9120**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
        **Collette Josey Covington and Jade Covington**

**James Hopkins**
**P.O Box 205**
**Sulphur, LA  70664**
**(337) 527-7071**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
        **Collette Josey Covington and Jade Covington**

**Lee A. Archer**
**1225 Rustic Lane**
**Lake Charles, LA  70605**
**(337) 474-4712**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
        **Collette Josey Covington and Jade Covington**


**Neil Hahn**
**Director of Litigation Systems Advocacy**
**The Advocacy Center**
**600 Jefferson Street, Suite 812**
**Lafayette, LA  70501**
**COUNSEL FOR AMICUS CURIAE:**
        **The Advocacy Center**

**COOKS, Judge.**

This appeal arises from the trial court's judgment rendering an award for attorney fees and costs to the prevailing attorneys in an action under the Americans with Disabilities Act (ADA) and the comparable laws of Louisiana.

## FACTS AND PROCEDURAL HISTORY

The facts of this case which served as the genesis of the present motion for attorney fees were previously set out by this court in *Covington v. McNeese State Univ.*, 08-505 (La.App. 3 Cir. 11/5/08), 996 So.2d 667, *writ denied*, 09-69 (La.3/6/09), 3 So.3d 491, as follows:

> On January 31, 2001, plaintiff, Collette Covington (hereinafter "Covington"), was a wheelchair-bound student at McNeese State University (hereinafter "McNeese") with a history of a seizure disorder. On that date, she attended class on campus in Farrar Hall. Covington then proceeded to the Holbrook Student Union (hereinafter "the Old Ranch"). There she was to meet at the designated location for her transportation provided by the Louisiana Vocational Rehabilitation Service.
>
> While waiting, Covington needed to use the restroom and proceeded to go into the Old Ranch. The doorway to the restroom that Covington attempted to use, at its smallest point, measured 29 5/8 inches in width, while the standards for ADA compliance is 32 inches. Covington alleged that while she was unable to enter into the restroom, she suffered the humiliation of urinating on herself while unsuccessfully trying to transport from her wheelchair through the narrow, non-complaint restroom stall door. Covington alleged that she then was injured while trying to gain sufficient leverage to open the door to exit the restroom.
>
> After lengthy discovery, it was admitted by McNeese that not a single women's restroom in the Old Ranch is ADA compliant. Further, McNeese admitted that it did not have a transition plan in writing as required by the ADA.

Covington filed suit against McNeese alleging violations of Title II of the Americans with Disabilities Act (ADA), and the comparable Louisiana laws specifically prohibiting discrimination against the handicapped by educational institutions. She further alleged in her petition that she was injured while trying to use and exit a non-compliant restroom on the McNeese campus. She asserted the

non-compliant restroom violated both the provisions of Title II of the ADA and La.R.S. 46:2254 which mandates "[A]n educational institution shall not: (1) Discriminate in any manner in the full utilization of the institution…" On a motion for summary judgment in 2007, the district court found Covington was entitled to a judgment as a matter of law on the following issues: (1) McNeese was not immune from suit under U.S. Const. amend. XI; (2) Covington was disabled as defined by the ADA at the time of the incident giving rise to the lawsuit; and (3) McNeese discriminated against her based on her disability. Despite representations to the contrary, McNeese has judicially admitted that Plaintiff's actions "have and will result in substantial changes both at the facilities at McNeese and McNeese's policies for the disabled." The parties stipulated in the injunction signed in this matter as follows:

> The parties stipulate that there has been an alteration in the legal relationship of the parties, thus entitling that Covington is the prevailing party under the ADA with standing to seek attorney's fees in this suit. During the pendency of this suit Covington filed a grievance with the U.S. Department of Justice. And, as a result, the defendants are in the process of negotiating a settlement under which the State of Louisiana and defendants will expend a substantial sum of money to bring the McNeese campus into compliance with the ADA for the benefit of Covington and other disabled students. The parties stipulate that Covington's actions have and will result in substantial changes both to the facilities at McNeese and McNeese's policies for the disabled.

On appeal, we affirmed the decision of the district court, stating we could not "fathom that McNeese felt no need, regardless of whether it was required by law, to upgrade a single women's restroom into ADA compliance in a building that houses, inter alia, the two main student cafeterias on campus, offices for student government and activities, and a state-of-the-art computer laboratory." *Id*. at 687. We also noted McNeese's refusal to comply with the federal mandate to provide handicapped accessibility was "reminiscent of the intolerance of the past." *Id.* at 687. As Judge John D. Saunders of this court astutely wrote and cautioned:

> We had hoped that the days where a court has to step in to ensure that people were treated equally under the laws of this country were gone. Yet, still, McNeese is emboldened enough to bring such a case to an appellate court where a published, written opinion will forever memorialize its discrimination against this country's disabled citizens. It is hoped that McNeese will reassess its attitude toward its disabled students. It is also hoped that McNeese will prepare and publish a transition plan as required by the ADA.

*Id.* at 687-88.

This court also noted that in the previous appeal, Tim Delaney, Director of Services for Students with Disabilities, who was assigned by McNeese to deal with disabled students, candidly admitted he "regarded Covington 'as having such impairment,'" but McNeese persisted in its discriminatory behavior. This prompted our court to state in that opinion "[h]ad Covington brought an action for frivolous appeal on this particular issue, it would seem that this court would have granted such a request." *Id.* at 678-79. McNeese's request for rehearing with this court, and its writ application to the Louisiana Supreme Court, were denied.

McNeese eventually settled with Covington, but took another 395 days from the time it exhausted all efforts to overturn the summary judgment to formulate and disseminate an accommodation plan for the disabled on its campus. McNeese's response was slow in coming, even when faced with a United States Department of Justice investigation which focused on Covington's complaint and the multitude of willful violations of the ADA across its campus. Ultimately, McNeese's final plan addressed some 15,000 ADA violations on its campus.

The motion for attorney fees, which is the subject of the present appeal, was filed by six attorneys who worked on Covington's behalf. Covington's lead counsel was Seth Hopkins. He began his involvement with the case shortly after graduating from law school in 1999. For the next ten years, young Hopkins worked on Covington's case, without any compensation. Hopkins testified, to support himself while pursuing Covington's case, he accepted employment as a

staff attorney at a Houston, Texas law firm. He testified his continued involvement with Covington's case kept him from accepting more lucrative work. Meanwhile, McNeese's attorneys, more than twelve in all, received compensation all along the way for their services as the case dragged along.

The trial court noted Hopkins "took a personal interest in the case" and "passionately pursued the interests of his clients, and immersed himself in ADA law in order to provide the most effective representation he possibly could." He relentlessly pursued the Covington case and ultimately prevailed. In the words of Hopkins:

> As the months turned to years, I saw Collette's despair grow, and I was moved by her powerlessness and her passion about getting a degree in early childhood education. I also realized that McNeese was an important part of the community, was the largest employer in the area, had an enthusiastic alumni and supporters, lots of influence and the almost unlimited legal financial resources of the government.
>
> I was… forced to face some of the Attorney General's most experienced attorneys 30 years my senior, to date, 12 attorneys on the other side.
>
> Unlike those who argued in favor of McNeese's discrimination, plaintiff's counsel have gone unpaid for ten years.

Hopkins and the other five plaintiff's attorneys submitted timesheets documenting the time spent on the Covington litigation. The attorneys also presented affidavits from four expert attorneys, including three local attorneys who previously handled ADA cases in the Lake Charles area and one national expert. These experts indicated it was reasonable to expect lead counsel to expend 6,500 hours in advancing Covington's claim, but Seth Hopkins points out he only requested 83% (5,489.5 hours) of that amount. Hopkins voluntarily reduced his hours covering ten years of dedicated representation to allow for discrepancies in time records which made it appear he had billed for more than twenty-four hours in a day. The claimed hours also do not include numerous hours of telephone conversations with opposing counsel which were too burdensome to constantly

4

keep track nor the six days spent at the fee application hearing. Additionally, Covington's attorneys filed nearly 700 pages of briefs and 7,500 pages of exhibits. This was well in excess of the 200 pages of briefs and 500 pages of exhibits introduced by McNeese's attorneys. The present appeal record includes 45 volumes containing 11,000 pages.

Covington also requested an upward adjustment--enhancement--of the Lodestar hourly rate based on the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), such as the novelty or difficulty of a claim, the time and labor required to litigate the claim, and the extent to which taking the case hindered the attorney's acceptance of other work.

During the fee hearing, McNeese presented the live testimony of only one expert, whose testimony was partially stricken from the record without objection. It asked few questions during the hearing designed to test the accuracy of each time entry made by plaintiffs' attorneys, electing instead to take a shot-gun approach blasting the whole fee application and assailing Hopkins' credibility— just as it had done for years to derail Covington's ADA and personal injury claims. These attacks, like the current ones observed from the record, required Hopkins to spend countless hours defending his integrity as a person and as a practicing member of the Bar. McNeese referred to young Hopkins as slow, greedy, and unethical and claimed he was obsessive, incompetent, and dishonest. It also accused him of fraud and claimed Hopkins had committed a felony and should be disbarred. Disguised as innocent discovery efforts, McNeese sought Hopkins' financial records as well as his health records. It investigated his friends and caused his former employer, a Texas law firm, to file and obtain a protective order to prevent McNeese from gaining carte blanche access to the firm's private records. McNeese even resorted to showing the trial judge a cartoon depicting young Hopkins as a liar.

5

At the close of the fee hearing, the trial court found Hopkins' testimony credible, and found the documents the attorneys presented supporting the hours claimed were neither exaggerated nor unexpected. In calculating the attorney fee award, the trial court noted it was following the approach used by the United States Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct 1933 (1983), which used the "lodestar" method, i.e., taking the number of hours the attorneys and their employees worked multiplied by the hourly rates prevailing in the community.

First, the trial court fixed the reasonable hourly rate in this case at $240.00. He then denied all the attorneys' request for an enhancement of the assigned reasonable hourly rate, stating the following:

> The Court recognizes that *McNeese was disdainfully defensive of its unacceptable condition, in spite of a federal mandate to make its facilities accessible to the disabled.* The Court further recognizes the *militant defense* taken by Defendant throughout this litigation in the face of its *obvious error.* The number of hours which Plaintiff's counsel was required to expend prosecuting this case *has certainly been increased by defendant's constant attempts to prolong this litigation*, and this will be taken into account in the lodestar determination of the fee awarded; however, it cannot be ignored that McNeese is a publicly funded university. Thus, those responsible for the seemingly deliberate disregard for the responsibilities of McNeese will not bear the burden of any sanction imposed upon this state university; it will instead be borne by Louisiana taxpayers. For this reason, the Court declines to enhance the award of attorneys' fees based upon the conduct of the defendant.
>
> Plaintiff also requests an enhancement based upon the twelve *Johnson* factors; however, plaintiff relied primarily on the following four: 1) time and labor required for the litigation; 2) the customary fee; 3) the amount involved and the results obtained; and 4) the experience, reputation and ability of counsel. Time and labor required to litigate the action is clearly taken into account in the lodestar calculation, as the number of hours reasonably expended is one of the two named factors in lodestar. Clearly, the "customary fee' is also subsumed by the lodestar as the reasonable fee is the second named lodestar factor. The experience, reputation and ability of counsel is also very evidently taken into account in the lodestar calculation, as it is an important factor in the determination of a reasonable hourly rate. Accordingly, the Court does not find these factors to be an appropriate basis for enhancing the lodestar award.

> Plaintiff's third argument is certainly the most convincing of the four. *Plaintiff did achieve substantial success through this litigation – having ultimately effected a $13.8 million renovation of the campus of McNeese State University to finally bring it into compliance with the ADA.* However, the exception of the rule against enhancement is strictly limited to "rare and exceptional circumstances", and the Court believes it important to note that the Supreme Court has *never* sustained an enhancement of a lodestar award for performance. *Perdue v. Kenny A.*, 130 S.Ct. 1662, 1667 (2010). Accordingly, the Court declines to grant Plaintiff's request for an enhancement of the attorney's fee award as calculated by the lodestar method.

(Emphasis added.)

The trial court accepted, without adjustments, the time sheets filed by five of Covington's attorneys and rendered the following fee awards:

James Hopkins, 624.7 hours at $240.00 per, for a fee of $149,928.00.

James Doyle, 28.6 hours at $240.00 per, for a fee of $6,864.00.

Heath Dorsey, 76.85 hours at $240.00 per, for a fee of $18,444.00.

Robert Breen, 114.9 hours at $240.00 per, for a fee of $27,576.00.

Lee Archer, 147.25 hours at $240.00 per, for a fee of $35,340.00.

McNeese did not object to the time submitted by these five attorneys and does not challenge the reasonableness of their hours on appeal. It does, however, take issue with the trial court's decision to calculate the fees based on a finding that $240.00 is the reasonable hourly rate in the community. Thus, it appeals the awards to these five attorneys solely on this basis.

Turning to Seth Hopkins' fee application, the trial court concluded it "was appropriate to reduce Hopkins' time by 20% in order to arrive at a reasonable number of hours expended for purposes of a lodestar calculation." The trial court gave the following reasons for this reduction:

> The Court does recognize that Hopkins' initial inexperience both with ADA law and as an attorney, having begun this litigation less than two years out of law school, likely contributed to the number of hours spent researching and preparing pleadings, memoranda and other case materials. While certainly not intending to discourage diligence or attention to detail, the Court finds that, had an attorney

more experienced in ADA law been lead counsel in this case, significantly fewer hours would have been billed.

As a result, the trial court reduced Hopkins' requested number of hours from 5,489.5 to 4,391.6 hours. This, when multiplied by the reasonable hourly rate of $240.00, rendered an attorney fee award to Seth Hopkins of $1,053,984.00. Covington also was awarded expenses in the amount of $41,570.47 and all costs of the litigation were assessed to McNeese.

McNeese complains the district court (1) erred in failing to reject *"in its entirety"* Hopkins' application for attorneys' fees as "excessive, unreasonable, and incredible"; (2) erred in failing to "provide a reasonably specific explanation as to how it determined that $240 is the prevailing hourly rate in the Lake Charles community"; and (3) erred in relying on "the prevailing hourly rates from communities other than the Lake Charles community." (Emphasis added.)

Covington's attorneys answered McNeese's appeal and also assign error to the assessment of attorney fees. They contend the trial court abused its discretion in reducing Seth Hopkins' billable hours by 20%, from 5,489.5 hours to 4,391.6 hours. They also argue the trial court abused its discretion in not awarding $265.00 as the reasonable hourly attorney's fee rate and in failing to enhance this rate. Further, they request that this court award sanctions against McNeese for a frivolous appeal.

## ANALYSIS

The Americans with Disabilities Act (ADA), 42 U.S.C. §12101 *et seq.*, was passed in 1990 to remedy discrimination against persons with disabilities. Without enforcement, the ADA, and any other civil rights law, would have little practical effect. To that end, congress has enacted fee-shifting statutes, such as 42 U.S.C. §12205, the attorney fee provision in the ADA, to encourage individuals injured by discriminatory practices to seek judicial redress, and "to ensure that the *costs of*

*violating civil rights laws [are] more fully borne by the violators, not the victims."*
*Newman v. Piggie Park Enter.*, 390 U.S. 400, 402, 88 S.Ct. 964 (1968) (Emphasis added). Thus, when a plaintiff brings a civil rights action and prevails, he is acting as a "private attorney general, vindicating a policy that Congress considered of the highest priority." *Id*. at 402. Although awarding attorney fees in these contexts is discretionary, it is highly encouraged as a policy to provide incentive for attorneys to take on cases that may cure or deter constitutional and statutory violations yet not engender large damages awards. *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 98 S.Ct. 694 (1978).

Furthermore, once a plaintiff is a prevailing party, an award of attorney fees is virtually obligatory. In *Barrios v. California Interscholastical Federation*, 277 F.3d 1128, 1134 (9th Cir. 2002), the federal court, quoting the United States Supreme Court in *Hensley*, 461 U.S. 424, 103 S.Ct. 1933, noted "in civil rights cases, the district court's discretion is limited. A prevailing party under the ADA 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" We cannot imagine a more compelling case than the one before us in which Plaintiff's attorneys should be fully compensated.

## I. Did the Trial Court Err in Accepting Seth Hopkins' Fee Application?

McNeese contends the trial court erred in failing to reject in its entirety Seth Hopkins' application for attorney fees. Although acknowledging Congress has authorized the judiciary to deviate from the general rule that each party bear its own attorney fees and costs by shifting fees from one party to another, McNeese contends in this case Hopkins has lost his right to an award of attorney fees. Essentially, McNeese argues Hopkins should receive no attorney fees because his original fee application did not contain fully accurate and detailed time entries from the outset, with no unnecessary or unreasonable hours. McNeese states in brief that "a fee application that contains exaggerated time entries must be rejected

to discourage greedy lawyers from seeking inflated fees" and that "fee applications with exaggerated time entries cannot simply be reduced, but must be rejected in their entirety."

To support its position, McNeese directs our attention to several cases which it argues compel the result it now demands. McNeese cites *Brown v. Stacker*, 612 F.2d 1057, 1059 (7th Cir. 1980), which involved a lawyer who demanded 800 hours of billable time for preparation of a six-page complaint on "a simple case which required little legal skill;" and *Lewis v. Kendrick*, 944 F.2d 949 (1st Cir. 1991), in which a plaintiff prevailed only on a minor portion of one claim, and the attorney failed to separate fees for factually separate claims. It also references *Fair Housing Council v. Landow*, 999 F.2d 92, 97 (4th Cir. 1993), and points to the court's denial of a fee request in its entirety citing "woefully inadequate time records, [and a] failure to make a good faith effort to exclude fees attributable to unsuccessful claims," which led the court to conclude the "fee petition was so outrageously excessive it shocked the conscience of the court." Finally, McNeese cites *Scham v. District Courts Trying Criminal Cases*, 148 F.3d 554 (5th Cir.1988). In that case, a lawyer's motion for attorney fees seeking approximately $624,000.00 was denied in its entirety by the district court. *Scham* subsequently filed a motion for reconsideration seeking over $20 million in fees, which also was denied. The Fifth Circuit in *Scham* affirmed the outright denial of fees, noting "[d]uring the short, one-year pendency of this case, discovery was limited, and there were no meetings of the parties or attorneys, no settlement negotiations, no mediation, no court appearances, and no trial." *Id.* at 557. The court specifically held the amount of fees sought by the attorney was "so clearly excessive that it 'shocks the conscience' of the court." *Id.* It also set forth what is required to deny an award of attorney fees in their entirety:

10

We conclude there are special circumstances that justify the district court's denial of fees in this case. Other circuits have held that "a district court may, in its discretion, deny a request for attorneys' fees in its entirety when the request, submitted pursuant to 42 U.S.C. 1988, is so excessive it 'shock[s] the conscience of the court.'" (Citing *Fair Housing Council v. Landow*, 999 F.2d 92, 96 (4th Cir.1993) (quoting *Sun Publ'g Co. v. Mecklenburg News, Inc.*, 823 F.2d 818, 819 (4th Cir.1987)); see also *Lewis v. Kendrick*, 944 F.2d 949, 957-58 (1st Cir.1991); *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir.1980).

*Id.* at 557.

We further note the "shock the conscience" theory in *Scham* was augmented by the "catalyst theory" in *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 121 S.Ct. 1835 (2001). Other than these theories, we know of none that would move us to reject an award of fees in this case in entirety.

The cases cited by McNeese are not factually on par with the present one. The fee application submitted by Hopkins does not shock the conscience of this Court. The same cannot be said for McNeese's behavior throughout this litigation. McNeese neither urges nor could it rely on the "catalyst theory," which "posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* at 600. Nothing McNeese has done here in response to the claims made has been voluntary.

Hopkins offered a reasonable explanation in response to McNeese's pointing out that on a few occasions his billing record reflected more than twenty-four hours in a work day. Hopkins also offered testimony and evidence to demonstrate that on these occasions he worked into the "wee" hours of the morning from the night before and understandably slotted the time on the wrong date. McNeese offered nothing to rebut his reasonable explanation, except defense counsel's argument buttressed by insinuations followed by verbal cries of dishonesty and like attacks on young Hopkins' character. Additionally, in a demonstration of good faith and

fair dealing, Hopkins voluntarily redacted the specific line items flagged by the defense, though he had no doubt the hours were expended, and he expressed a willingness to do more if McNeese would abandon its "not a dime" approach. The amount of time claimed by Hopkins was further supported by the affidavits of four experts who all testified that a reasonable time amount for such litigation would be approximately 6,500 hours. Hopkins only requested 83% (5,489.5 hours) of that amount, adjusting for inadvertent errors which may have occurred and understandably anticipating the battle to come as McNeese maneuvered to avoid any payment. Despite Hopkins' good faith efforts to make a significant downward adjustment in the hours claimed, McNeese continues to discharge torpedoes at his application. As Hopkins so eloquently stated in his opening remarks to the trial court at the hearing on his attorney fee application:

> A reasonable defendant found to have discriminated against this country's citizens with a Third Circuit opinion like the one that we got, might conclude that opposing counsel should have earned some fees. But, McNeese believes that ten years worth of work in this case should be worth absolutely nothing to their opponents. That is the kind of hard-line approach that we've had to deal with from a $4,000.00 bathroom to a 14 million dollar Compliance Decree, and now with attorney's fees it's the same way. We have to start at zero because that's all that will be conceded.

McNeese's defense tactics have served only to increase the attorneys' fee bill it complains has been padded. When questioned on appeal as to the wisdom of its stance, McNeese did not equivocate in repeating it. Eventually, after some common sense pressing by the court, McNeese begrudgingly posed, in the event this court was inclined to affirm an award in Hopkins' favor, it should not exceed a small contingency percentage of Covington's settlement proceeds—even this amount it insists is undeserved. It remained resolute that the law forbids us from doing more. The only thing the law forbids is acceptance of McNeese's position. See *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686 (1986).

McNeese fails to seriously give weight to the wealth of jurisprudence favoring a just and reasonable award for the work performed by all the attorneys in this case for many years. Suffice it to say here, in final support of our rejection of McNeese's position, the jurisprudence speaks loudly against it. We take brief opportunity to selectively reference only a few cases avoiding the unnecessary practice of stringing citations—see *Perdue v. Kenny A.*, 130 S.Ct. 1662 (2010); *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933 (1983); *Liger v. New Orleans Hornets NBA Ltd. Partnership*, 2010 WL 3952006 (E.D. La. 2010); *Oreck Direct v. Dyson, Inc.*, 2009 WL 1649503 (E.D. La., 2009).

## II. The Trial Court's Reduction of Seth Hopkins' Hours.

Covington contends on appeal that the trial court erred in reducing the number of hours earned by Seth Hopkins by 20%, from 5,489.5 to 4391.6 hours. The trial court found this reduction warranted due to Seth Hopkins' "initial inexperience both with ADA law and as an attorney . . . [which] likely contributed to the number of hours spent researching and preparing pleadings, memoranda and other case materials." The trial court believed "had an attorney more experienced in ADA law been lead counsel in this case, significantly fewer hours would have been billed."

Initially, we note, in reducing the billable hours requested by Seth Hopkins, the trial court did not point to any inaccurate or exaggerated entries in the time sheets provided. The sole reason given for the 20% reduction in the requested billable hours was Seth Hopkins' supposed inexperience with ADA law and as a lawyer in general. Our careful review of this record--**comprising 45 volumes containing 11,000 pages**-- required us to exhaust an exceptional number of judicial work hours. In doing so, we are firmly convinced Hopkins presented a well-orchestrated case worthy of emulation by the most seasoned attorneys. By the time Hopkins appeared at the motion for summary judgment hearing, he had been

13

battling his opponents, who steadfastly defended their discriminatory behavior, for six years. At that time the record comprised some twenty-five volumes with over 500 pages of original briefs by Plaintiffs' counsel and 7,500 pages of exhibits. The summary judgment and motion for injunctive relief included almost 1,000 pages and literally a truckload of documents. The case became so voluminous that Hopkins had to move out of an apartment into a house so as to dedicate an entire floor to its safekeeping.

Against the odds, Hopkins filed a well-documented and thorough motion for summary judgment which avoided a longer, more protracted, and more expensive litigation to bring the matter to an end. We note that McNeese, though asserting now that the attorney fees for disposing of this matter on summary judgment are excessive, vehemently urged at the motion for summary judgment that the case needed far more time and development and should not be disposed of on summary judgment. McNeese argued that even more time should be spent on this litigation and true to that sentiment, it has exhaustively stayed the course.

McNeese's unyielding defense, throughout these proceedings, has substantially contributed to the voluminous record now before us. This Court specifically noted McNeese advanced a hypothesis that Covington was faking her disability, a hypothesis which was *"unfathomable"* and *"completely unsupported by evidence in the record*." (Emphasis added.) The trial court specifically referenced McNeese's "militant defense" taken "throughout this litigation." It also stated "[t]he number of hours which Plaintiff's counsel was required to expend prosecuting this case has certainly been increased by [D]efendant's constant attempts to prolong this litigation." There simply is no evidence that the number of hours claimed by Hopkins for his work in this case was increased because of Hopkins' inexperience or lack of skill. The record clearly demonstrates the contrary.

14

Further, the four unpaid experts who testified were unanimous that Seth Hopkins' *original request for 6,199.5 hours* was reasonable. This was before Hopkins removed over 700 hours from his request. Edward Fonti, who was a local attorney experienced in ADA law, stated "[t]he itemized billing summary in this case reflects only services and fees necessary for the prosecution of this case and which I and other practitioners of this area of law might have reasonably charged if in the position of prosecuting this case under the same circumstances."

Winfield Little, a former President of the Southwest Louisiana Bar Foundation, who had prosecuted an ADA case in the past, stated in his affidavit that the hours billed were consistent with local billing practices:

> I am aware that the *Covington* case has been a long, contentious, and novel case which has resulted in a summary judgment for the plaintiffs, has involved a significant federal civil rights investigation, and has made a significant impact in the field of disability discrimination law in Louisiana. I consider it completely reasonable and consistent with local billing practices for a case of this length and impact to require 6,000 or more hours of billable time to prosecute.

Thomas Lorenzi, who was involved in an ADA case in southwest Louisiana, testified in his affidavit he "consider[ed] it completely reasonable and consistent with local billing practices for a case of this length and impact to require 6,000-6,500 or more hours of billable time to prosecute."

Jonathan Prejean, who averred that he has evaluated in excess of 2,000 legal bills from firms throughout the world, praised Hopkins' "lean staffing," and stated in his affidavit:

> Based on my review of the complexity and detail of the *Covington* case and particularly the requirements for extensive expert testimony, appeals, and contested motions, I consider this case to reach a level of complexity that rivals other complex litigation like patent litigation. I consider 6000-6500 hours of attorney time entirely reasonable for such a case. I have also reviewed the billing summary for this case, and the billing entries appear to reflect reasonable tasks to be performed personally by an experienced attorney. Work with the Department of Justice, for example, should rightly be seen as valuable attorney work toward the outcome in this case. There do not

15

appear to be any substantial charges for administrative tasks that might have been performed by less experienced attorneys who would be reasonably compensated at a lower rate than the blended and multiplied hourly rate being requested in this case.

Considering the testimony of the four expert attorneys that the amount of hours billed was well within that expected for such a complex civil rights case, as well as the trial court's acknowledgment that McNeese's "constant attempts to prolong this litigation" unduly increased the "number of hours which Plaintiff's counsel was required to expend prosecuting this case," the reduction of Hopkins' billable hours by 20% was an abuse of discretion. See *Cunningham v. City of McKeesport*, 807 F.2d 49 (3rd Cir. 1986), *cert. denied*, 481 U.S. 1049, 107 S.Ct. 2179 (1987). Therefore, we amend the judgment to award Seth Hopkins 5,489.5 billable hours.

## III.    *The Reasonable Hourly Rate.*

Both McNeese and Covington contend the trial court's award of $240.00 as the reasonable hourly rate was in error. As set forth above, in calculating attorney fees under the "lodestar" method the court multiplies the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. A reasonable hourly rate is "to be calculated according to the prevailing market rates in the relevant community" for attorneys of similar experience in similar cases. *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547 (1984); see also *Alberti v. Klevenhagen*, 896 F.2d 927 (5th Cir. 1990). An award of attorney fees should be high enough to "facilitate plaintiffs' access to the courts to vindicate their rights by providing compensation sufficient to attract competent counsel." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011). In determining the amount of reasonable attorney fees to award under federal fee shifting statutes, the trial court is afforded considerable discretion. *Hensley*, 461 U.S. 424, 103 S.Ct. 1933.

At the hearing below, Covington relied on the affidavits of her experts which set forth that $265.00 was the prevailing base rate for civil rights litigation in Lake Charles. McNeese provided the trial court with several decisions from the Western District of Louisiana that the prevailing market rate in the Lake Charles community ranges from $105.00 to $200.00 per hour. The trial court noted these cases, but declined to rely on them because they were not published decisions. It noted the only published case cited by McNeese was decided in 1996 and found a reasonable hourly rate in an ERISA action was $120.00 to $140.00. The trial court concluded, after indicating it would not consider rates outside of Lake Charles and would not consider Covington's cases from neighboring districts, that $240.00 was the prevailing hourly rate in the Lake Charles area "based on the testimony and authority submitted."

McNeese argued it was improper for Hopkins to increase his hourly rate from the $175.00 charged in 2001, which McNeese acknowledged was reasonable, to $265.00 today.[1] The law, however, is settled that *a prevailing party is entitled to receive current*, rather than historic, rates in a fee shifting case. *See Missouri v. Jenkins*, 491 U.S. 274, 109 S.Ct. 2463 (1989). Obviously attorney rates have increased over the last ten years, and the $265.00 hourly rate was accepted by all four of Covington's experts as the current base line rate for the Lake Charles area.

We find nothing in the record to support the reasonable hourly rate being set below $265.00. See *Cunningham*, 807 F.2d 49. Winfield Little, who, as noted above, handled one of the few ADA cases in the Lake Charles area, felt a $265.00 hourly rate was "extremely reasonable" and a "modest base rate." Thomas Lorenzi believed $265 per hour was extremely reasonable in this case, and noted he customarily charged $385.00 per hour. Notably, the $400,000.00 cash settlement

---

[1] We note with interest that counsel for McNeese, in a fee shifting case involving interpretation of an oil lease *located in Calcasieu Parish*, was awarded $805 per hour for 4,970 total hours by this Court (with total attorney fees amounting to approximately $4,000,000). See *Corbello v. Iowa Prod.*, 01-567 (La.App. 3 Cir. 12/26/01), 806 So.2d 32, 51-52, *reversed on other grounds*, 02-826 (La. 2/25/03), 850 So.2d 686 (however, the attorney fee award was upheld by the supreme court).

and six-year scholarship, the injunctive relief prohibiting McNeese from continuing to discriminate against the disabled, the fact that the case prompted a U.S. Justice Department investigation and resulted in $13.8 million being dedicated to bring McNeese's campus into ADA compliance are ringing endorsements of Covington's attorneys' superior performance. Therefore, we amend the judgment to set the reasonable hourly rate at $265.00 per hour.

## IV. *Enhancement of the Trial Court's "Lodestar" Fee Calculation.*

Covington urges on appeal that the trial court erred in refusing to award an enhancement to the lodestar hourly rate claimed. The Advocacy Center of Louisiana filed an *amicus curiae* brief in support of Covington's right to an enhancement. A review of the trial court's written reasons indicate several grounds it relied upon in denying the enhancement. These included the fact that taxpayers will ultimately bear the brunt of any enhancement, that an enhancement may not be awarded based on factors that are subsumed in the lodestar calculation, and that the U.S. Supreme Court has "*never* sustained an enhancement of a lodestar award for performance."

Covington argues an enhancement in this case is justified under the factors presented in *Johnson*, 488 F.2d 714. In *Johnson*, the federal appellate court listed 12 factors that a court should consider in determining a reasonable fee. Those factors were:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 717-19.

In *Hensley*, the U.S. Supreme Court citing *Johnson*, noted that the district court could, in its discretion, adjust the lodestar figure "upward or downward" to account for the "important factor of the 'results obtained.'" *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1940. *Hensley* instructed that the district court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation," but there was "no precise rule or formula" for taking this factor into consideration. *Id.* 461 U.S. at 435-36, 103 S.Ct. at 1940-41.

In the years since *Hensley*, the Supreme Court has attempted to "cabin" the amount of discretion afforded district courts in adjusting the lodestar figure. In *Blum*, 465 U.S. at 897, 104 S.Ct. at 1548, the Court clarified that while "there may be circumstances in which the basic standard of reasonable rates multiplied by reasonably expended hours results in a fee that is either unreasonably low or unreasonably high," the lodestar figure is "presumed" to be reasonable. The Court also warned against "double counting" factors such as the "amount involved and results obtained" by adjusting the lodestar figure where those factors are fully reflected in the reasonable hourly rate of the attorneys and the reasonable number of hours expended. *Blum*, at 899-900. The Court noted "[b]ecause acknowledgment of the 'results obtained' generally will be subsumed within other factors used to calculate a reasonable fee, it normally should not provide an independent basis for increasing the fee award." *Id.* at 900.

More recently, in *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. ___, 130 S.Ct. 1662, 1672 (2010), the court commented that the factors in *Johnson* "gave very little actual guidance to district courts. Setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results." It further noted the "lodestar" approach has "achieved dominance in the federal courts after our decision in *Hensley*." *Id.* at

19

1672. Although noting the "lodestar" approach was not perfect, the court observed "unlike the *Johnson* approach, the lodestar calculation is 'objective,' *Hensley*, *supra,* at 433, 103 S.Ct. 1933, and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Id.* at 1672.

The *Perdue* court, citing *Blum*, also emphasized "there is a 'strong presumption' that the lodestar figure is reasonable." *Id*. at 1672. Noting it had never sustained an enhancement of a lodestar amount for performance, the supreme court emphasized that the strong presumption in favor of the lodestar figure can only be overcome in "'rare' and 'exceptional' circumstances." *Id.*at 1674.

Covington takes exception with the trial court's seemingly heavy reliance on the fact that the taxpayers of this state will be burdened by any additional fees rather than those responsible for the discriminatory violations on which Covington's judgment is based. The *Perdue* court addressed this argument:

> Section 1988 serves an important public purpose by making it possible for persons without means to bring suit to vindicate their rights. But unjustified enhancements that serve only to enrich attorneys are not consistent with the statute's aim. In many cases, attorney's fees awarded under § 1988 are not paid by the individuals responsible for the constitutional or statutory violations on which the judgment is based. Instead, the fees are paid in effect by state and local taxpayers, and because state and local governments have limited budgets, money that is used to pay attorney's fees is money that cannot be used for programs that provide vital public services. Cf. *Horne v. Flores*, 557 U.S. ___, ___, 129 S.Ct. 2579, 2593-2594, 174 L.Ed2d 406 (2009).

But, the Supreme Court in *Perdue* was clear to "reject any contention that a fee determined by the lodestar method may not be enhanced in any situation" when the government will ultimately pay the tab. *Perdue*, 130 S. Ct. at 1673. Certainly the results achieved by counsel for Covington, as well as the hostile behavior engaged in by McNeese which served only to protract the litigation in these proceedings,

are factors that weigh heavily in favor of an enhancement to the lodestar award. Additionally, the substantial financial benefit gained by McNeese in receiving nearly fourteen million dollars for improvements to its facilities by the action pursued by Hopkins as a "private attorney general" is no small matter.

We accept as sound the Supreme Court's conclusion that a strong presumption exists favoring the reasonableness of the lodestar figure that can only be overcome in "rare" and "exceptional" circumstances. We find that this is indeed the kind of "rare" and "exceptional" case in which enhancement is entirely merited. We note from the Plaintiff's initial request in 1995, for a meager accommodation—one accessible women's restroom in one identified building—for handicapped students, it has taken McNeese a total of almost 5,000 days to respond at all to this plea, except to wage a war of attrition against Covington and her attorneys. It took McNeese 3,300 days from the date the suit was filed, 1,200 days from the ruling on the summary judgment ordering relief, and 395 days from the date the appeal was final to formulate and take steps to implement any accommodation plan for Plaintiff or other handicapped persons attempting to use its facilities. While McNeese applauds its willingness to settle Covington's personal injury claim, even that courtesy did not come until April 2010—nearly three years after the trial court's summary judgment holding it liable was rendered.

The record discloses that over the protracted course of this litigation McNeese's actions precipitated Plaintiff's filing at least six consolidated motions to compel discovery. When Plaintiff's counsel had amassed 800 hours of attorney time in the matter he sent a letter to McNeese urging it to put an end to the litigation and its rising costs by agreeing to Plaintiff's humble request for a restroom. At the summary judgment hearing, Judge Carter also urged McNeese to "put an end to this – give her a bathroom—stop making these lawyers work…" McNeese responded by filing a belated recusal motion, urged by its legal

21

representative, eventually forcing the removal of Judge Carter from the case. By this time the summary judgment record included 25 volumes—500 pages of original briefs, 7,500 pages of exhibits, and a truckload of documents.

The United States Supreme Court in *Perdue* specifically acknowledged an enhancement may be necessary when "an attorney's performance involves exceptional delay in the payment of fees" and when "the litigation is exceptionally protracted." *Perdue*, 130 S.Ct. at 1674-75. As noted, it did not exempt public institutions from the threat of such an award. We are persuaded by Covington's argument and the later cases following the reasoning of *Perdue* that an enhancement is warranted in this case, particularly considering the exceptional delays these attorneys have faced in recouping their expenses and fees, largely attributable to McNeese's unrelenting efforts to avoid the consequences of its inexcusable deafness when hearing the pleas of the disabled using its public facilities. *See McClain v. Lufkin Indus., Inc.*, 649 F.3d 374 (5th Cir. 2011); *Baker v. Windsor Republic Doors*, 414 F.Appx. 764 (6th Cir. 2011). The trial court in this matter specifically noted McNeese was "disdainfully defensive" of the unacceptable condition of its campus and adopted a "militant defense" throughout the litigation in "the face of its obvious error." The trial court also recognized the hours required to prosecute the case were "certainly. . . increased by [McNeese's] constant attempts to prolong this litigation." McNeese took extreme positions throughout the proceedings, beginning with allegations that Covington was faking her disability, a position this Court referred to as "unfathomable" and "completely unsupported by the record." In responding to the present attorney fee application, which the United States Supreme Court has advised "should not result in a second major litigation," (see *Hensley*, 461 U.S. at 437) McNeese took the untenable position that Seth Hopkins was entitled to nothing. In an attempt to advance its unreasonable position, McNeese engaged in burdensome and over-reaching

discovery, attacked Hopkins' worth and credibility as an attorney, and turned the attorney fee motion and hearing into a lengthy proceeding full of personal venom, extending even on this appeal.

McNeese's prolonged "militant" behavior is reason enough for awarding an enhancement. When coupled with the extraordinary success achieved by Covington's attorneys, it appears to more than meet the "rare" and "exceptional" circumstances mentioned by the United States Supreme Court. The Advocacy Center's *amicus curaie* brief noted the "results in this case clearly reflected superior performance by [Covington's] counsel." Above and beyond the $400,000.00 cash settlement, injunctive relief, and six-year scholarship awarded to Covington, the case prompted the U.S. Department of Justice to undertake an investigation of the McNeese campus, which resulted in an ADA settlement which provided the McNeese campus with $13.8 million to renovate the campus and bring it into ADA compliance. But despite the ultimate reward it gained from violating the ADA, McNeese persisted in its attempt to avoid full legal responsibility for its shameful past behavior. In its closing remarks during oral argument before this court, McNeese once more demonstrated its refusal to recognize the seriousness of its past failure to comply with the ADA mandates by dismissing Plaintiff's success in this case as "insignificant."

However, our decision to grant an enhancement in this case must also dovetail with this court's responsibility to use a method that is reasonably objective and capable of being reviewed on appeal. *Perdue*, 130 S.Ct. at 1674. Guided by this principle, we fix the enhancement at nine and one-half percent (9.5%) interest—the statutory judicial interest rate in 2007, the year summary judgment was rendered in this case. This method is in keeping with the United States Supreme Court's holding in *Perdue*:

> [T]here may be extraordinary circumstances in which an attorney's performance involves exceptional delay in the payment of fees. An attorney who expects to be compensated under § 1988 presumably understands that payment of fees will generally not come until the end of the case, if at all. See 532 F.3d, at 1227 (opinion of Carnes, J.). Compensation for this delay is generally made "either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value." *Missouri v. Jenkins*, 491 U.S. 274, 282, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) (internal quotation marks omitted). *But we do not rule out the possibility that an enhancement may be appropriate where an attorney assumes these costs in the face of unanticipated delay, particularly where the delay is unjustifiably caused by the defense.* In such a case, however, the enhancement should be calculated by applying a method similar to that described above in connection with exceptional delay in obtaining reimbursement expenses. (Emphasis added)

*Id.,* at 1675. The method referred to in *Perdue* is to apply "a standard rate of interest" to such expenses or attorney fees. *Id.* at 1674-75. We have limited our enhancement to this minimal remedy only out of consideration that the awards will be borne by the taxpayers of this state, rather than exclusively by those who willfully and inexcusably practiced discrimination plainly and expressly forbidden by both Louisiana and federal law. Were this not the case, our ruling would surely be to accept young Hopkins' eloquent plea for greater compensation. Perhaps, if given the opportunity, our supreme court may be inclined to see differently, employing a greater enhancement method, which we would deem a welcome clarification of existing jurisprudence.

Our courts must always remain mindful that there are a limited number of attorneys willing to bear the personal cost and sacrifices inherent in most civil rights litigation. We cannot underestimate the chilling effect this type of militant and pernicious behavior heaped upon Plaintiff and her counsel for ten years, and even now on appeal, has upon other attorneys, young and old, as well as potential plaintiffs. It is the court's duty to likewise send a message to the bar, experienced as well as eager young lawyers, that they may rely upon the precepts of law as well as fundamental fairness and fair-play, to protect and safeguard them against the

personal and financial costs of truly devoted representation of their clients. These attorneys' representation spanned a decade of hard work and sacrifice in the face of obstinate resistance to laws guaranteeing basic human and civil rights and public attacks on their character and worth. To do anything less is a disservice to the citizens which these laws are designed to protect and to the gallant attorneys willing to make years of personal sacrifice in the cause of justice.

## V. *Sanctions for Frivolous Appeal.*

Covington also seeks sanctions against McNeese under La.Code Civ.P. art. 2164 for a frivolous appeal. While we find McNeese's arguments are without merit, we cannot say there is no legal basis, however tenuous, for its position on appeal. Therefore, we will not award sanctions for a frivolous appeal.

## VI. *Additional Attorney Fees for Work Performed on Appeal.*

Covington seeks an award of additional attorney fees for the work necessitated by this appeal. The attorneys list their hours of work on appeal as follows: "158 hours for Seth Hopkins, 80 hours for James Hopkins, and 36 hours for Lee Archer, at the rate established on appeal." Additionally, Covington's attorneys seek an award of attorney fees for their work on their reply brief addressing the issue of striking Allen Smith's testimony in the amount of "32 hours for Seth Hopkins, 17 hours for James Hopkins, and 12 hours for Lee Archer at the rate established on appeal."

In cases where attorney fees are awarded by the trial court, and a subsequent appeal has required additional work on the part of plaintiff's counsel to defend against an unsuccessful appeal, the courts have found an award of attorney fees for the defense of an appeal is merited. See *Sims v. Sun Chemical Corp.*, 34,947 (La.App. 2 Cir. 8/22/01), 795 So.2d 439; *Tillmon v. Thrasher Waterproofing*, 00-395 (La.App. 4 Cir. 3/28/01), 786 So.2d 131. This Court has held when "attorney fees were correctly awarded below, failing to award increased attorney fees for the

additional work required for this appeal would be inconsistent with that judgment." *Frank v. Kent Guidry Farms*, 01-727, p. 5 (La.App. 3 Cir. 5/8/02), 816 So.2d 969, 973, *writ denied*, 02-1608 (La. 6/27/03), 847 So.2d 1273.

Covington properly requested attorney fees associated with the appeal and claimed 335.00 hours of work by plaintiff's counsel was necessitated to defend the present appeal at a rate of $265.00 per hour. McNeese has not attacked as unreasonable the hours claimed by the attorneys on appeal. We award Plaintiff additional attorney fees in the amount of $88,775.00 for work required to successfully litigate this matter on appeal.

## VII. *Motion To Strike McNeese's Expert's Testimony*

After the six-day hearing on the motion to set attorney fees, the trial court agreed to accept transcribed expert deposition testimony from the parties solely pertaining to the appropriate hourly rate to be used in calculating the award of attorney fees. Covington filed a Motion to Strike seeking to have excerpts submitted by McNeese stricken from the record, as those excerpts included testimony from its expert witness as to the reasonableness of hours expended litigating the case. McNeese responded with a one page letter, declining to respond to the motion and instead noting the trial court would "undoubtedly give the appropriate weight to the evidence submitted." The trial court then granted Covington's essentially unopposed motion striking "those portions of deposition transcripts submitted by [McNeese] wherein witnesses opine as to the reasonableness of hours expended. . ., such that only those portions of transcripts wherein witnesses testify as to the reasonableness of an hourly rate or factors relating to a reasonable hourly rate shall remain part of the case record."

Covington notes on appeal McNeese did not allege any error on the trial court's part in striking this testimony. However, McNeese did refer to this stricken testimony of its expert several times in brief. Covington filed a Motion to Strike

26

the Testimony of McNeese Expert Allen Smith with this Court, seeking to enforce the trial court's order limiting portions of the deposition excerpts to that pertaining to the reasonableness of the hourly rate. The motion was referred to this panel on the merits.

Specifically, Covington complains about the following references to this expert's deposition testimony contained in McNeese's original brief:

> (1) in reference to timesheets that were submitted by Seth Hopkins, "[Y]ou're not going to like what it suggests to me. . ."

> (2) "Significantly, one of Hopkins' own experts (Tom Lorenzi) and McNeese's expert (Allen Smith) both agree that it is difficult for a lawyer to have as much as 7.5 to eight billable hours in a single day."

> (3) "McNeese's expert, Allen Smith, confirms that the hours claimed are simply not believable."

> (4) "As noted by Allen Smith: 'That's more than just an occasional transposition, to me. . . . [T]hat shows me that there was something going on other than inadvertence.'"

> (5) "Beyond that, as pointed out by Allen Smith: 'If you find that there are entries which are inflated or suspect, then it makes you suspect everything that you have seen, and you know the old *falsus in unum, falsus in extensor*. . . .'"

There is no question the passages referenced above pertain to the reasonableness of the hours expended by Seth Hopkins rather than the reasonableness of the hourly rate, and are in violation of the trial court's order. Therefore, we grant Covington's Motion to Strike these passages in McNeese's brief.

### VIII. *Motion To Strike McNeese's Reply Brief.*

Covington also filed a Motion to Strike McNeese's Reply Brief on the grounds it violated the Uniform Court of Appeal Rules because it was not strictly confined to a rebuttal of Covington's points and contained "numerous offensive, insulting, abusive, discourteous and irrelevant criticisms of Covington's counsel." While McNeese's Reply Brief does not comply with the rules referenced by

27

Covington, we will allow it to remain in the record, as it evidences the vitriolic behavior engaged in by McNeese on appeal. Therefore, we will deny Covington's Motion to Strike McNeese's Reply Brief.

**DECREE**

For the foregoing reasons, the judgment of the trial court reducing Seth Hopkins' billable hours by 20% is reversed and the judgment is amended to award Seth Hopkins 5,489.5 billable hours. We also amend the judgment to set the reasonable hourly rate for Covington's attorneys at $265.00 per hour. We further amend the judgment to set the judicial rate of interest on all attorney fees awarded herein at a rate of 9.5%, such interest to commence as of February 24, 2011, continuing until paid. In all other respects the judgment is affirmed. The Motion to Strike those passages in McNeese's brief pertaining to the reasonableness of the hours expended by Seth Hopkins is granted. The Motion to Strike McNeese's Reply Brief is denied. We also award $88,775.00 in attorney fees for the work required to successfully litigate this matter on appeal. All costs of this appeal in the amount of $57,249.00 are assessed against defendant-appellant, McNeese.

**AFFIRMED IN PART; REVERSED IN PART; AMENDED; MOTION TO STRIKE PASSAGES GRANTED; MOTION TO STRIKE REPLY BRIEF DENIED.**

COLLETTE JOSEY COVINGTON AND JADE COVINGTON

VERSUS

MCNEESE STATE UNIVERSITY AND THE BOARD OF SUPERVISORS FOR THE UNIVERSITY OF LOUISIANA SYSTEM

AMY, J., concurring in part and dissenting in part.

I concur with the majority that the plaintiff is entitled to attorney fees in this case. I also agree with the decision to deny the request for sanctions for frivolous appeal and with the dispositions of the motions to strike.

However, I dissent from the remaining aspects of the majority opinion as I conclude that a full affirmation of the underlying judgment is appropriate. Notably, I find that the trial court acted within its discretion in compensating fewer attorney hours than sought and in determining the appropriate hourly rate.

Similarly, I conclude that the trial court acted reasonably in denying the enhancement to the lodestar hourly rate claimed. Therefore, I dissent from the majority's decision to apply that enhancement on appeal. Instead, I think it is likely that, in awarding the present day market value to the attorney's hourly rate rather than applying the prevailing historical rates at the time the hours were accrued, the trial court took into account some of the very compelling factors at work in this case. Further, jurisprudence suggests that a significant delay between the time legal services are rendered and the time that they are awarded may be acknowledged with *either* a delay enhancement *or* an award based on current market rates. *See, e.g., Humphrey v. United Way of Texas Gulf Coast*, 802 F.Supp.2d 847 (S.D. Tex. 2011). *See also Walker v. U.S. Dep't of HUD*, 99 F.3d 761, 773 (5th Cir. 1996) (wherein the Fifth Circuit explained that, in compensating

for a delay in payment in a desegregation proceeding "the district court may either grant an unenhanced lodestar based on current rates . . . or calculate the lodestar using the rates applicable when the work was done and grant a delay enhancement . . . . It may not do both.").

I also differ from the majority with regard to the appropriate amount of attorney fees awarded for work performed on appeal. Certainly, the plaintiff's defense of this appeal supports the award of fees pursuant to 42 U.S.C. § 12205. However, I believe that much of the litigation expense reported by the plaintiff's counsel was accrued in pursuit of the answer, which I have generally found to be unsuccessful. Therefore, I would set a figure lower than that now awarded.

For these reasons, I respectfully dissent in part and would affirm the trial court's decision in full.

**11-1077**

COLLETTE JOSEY COVINGTON AND JADE COVINGTON

VERSUS

MCNEESE STATE UNIVERSITY AND THE BOARD OF SUPERVISORS FOR
THE UNIVERSITY OF LOUISIANA SYSTEM

**PICKETT, J., concurring in part and dissenting in part.**

I concur with the majority that the fee application submitted by the attorneys for Covington was properly accepted by the trial court. I also concur with the determination that the reduction of hours was error and would increase the hours to the full number submitted in the fee application. I join the opinion insofar as damages for frivolous appeal are denied and with the dispositions of the motions to strike.

I disagree with the majority that the trial court abused its discretion in setting the hourly rate at $240.00. McNeese submitted recent cases from the Western District which were unpublished, and which the trial court claimed not to rely on in reaching its decision that the hourly rate would be $240.00. I see no reason to similarly discount those cases. I believe the $240.00 figure is within the broad discretion afforded the trial court in setting the rate, and would affirm the trial court's judgment.

I also disagree that an enhancement of the lodestar calculation is appropriate in this case. As I read the Supreme Court jurisprudence comprehensively cited by the majority, I would find that this is not the "rare and exceptional case" in which the award should be enhanced. The majority notes that the U. S. Supreme Court has tried to "cabin" the use of enhancements. I find that the "strong presumption"

that the lodestar fee is reasonable holds in this case. I agree that McNeese and its agents acted deplorably towards Covington, its lawyers used every dilatory tactic in the book to avoid compensating her or addressing her grievances, and that the abuse continued into this litigation over the attorney fees. But I find that the award is sufficient to compensate Covington's attorneys. I would simply find that the amount reached by applying the lodestar calculation is not unreasonably low, and therefore an enhancement is not appropriate, for these reasons and the reasons assigned by Judge Amy in his dissent.

Finally, I dissent from the amount awarded for attorney fees for work done on appeal. I agree that we can and should award additional fees. *See Hutto v. Finney*, 473 U.S. 678, 98 S.Ct. 2565 (1978), where the Supreme Court affirmed an award of additional attorney fees for work done appeal in a suit brought by prisoners in Arkansas. I think, though, that in order to award additional attorney fees, we must make a specific finding that Covington is a prevailing party under 42 U.S.C. §12205 in this appeal. I would so find. Nevertheless, I believe the amount awarded by the majority is excessive, and would award a lower amount.